WILLIAM BINNS AND C. STOCKTON HALSTEAD, PLAINTIFFS, *v.* CORNELIUS W. LAWRENCE.

The Tariff Act, passed in 1846, (9 Stat. at Large, p. 44,) enacted duties on glass, as follows, viz.
" Schedule B. Forty per centum ad valorem, Glass cut.
" Schedule C. Thirty per centum ad valorem, Glass tumblers, plain, moulded, or " pressed; not cut or punted."
The following classes of tumblers fall within Schedule B, and are chargeable with a duty of forty per centum, viz.
1. Glass tumblers, the entire surface of the bottom of which had been smoothed by the glasscutter or grinder, previous to their importation into the United States.
2. Glass tumblers, on the sides of which ornamental figures had been engraved by the glasscutter or engraver, previous to their importation into the United States.

THIS cause was brought up from the Circuit Court of the United States for the Southern District of New York, on a certificate of division in opinion between the judges thereof.

It was an action brought up by the plaintiffs against the Collector of New York for the return of certain duties, paid under protest, and charged to have been illegally exacted upon the importation of glass tumblers.

The tariff of 3d August, 1846, (9 Stat. at Large, pp. 44 45, chap. 74,) enacted duties on glass, as follows, viz. :

" Schedule B. Forty per centum ad valorem.
" Glass cut.
" Schedule C. Thirty per centum ad valorem.

" Glass tumblers, plain, moulded, or pressed; not cut or punted."

The demand of the plaintiffs, Binns & Halstead, for alleged overcharge of duties paid to the collector, was founded on the importations of glass tumblers of two kinds:

1. Glass tumblers, the entire surface of the bottom of which had been smoothed by the glasscutter, or grinder, previous to their importation into the United States.

2. Glass tumblers, on the sides of which ornamental figures had been engraved by the glasscutter, or engraver, previous to their importation into the United States.

Upon these tumblers the collector charged a duty of forty per cent. classing them under schedule B. In ten importations this duty of forty per cent. amounted to $6,695.70, whereas the plaintiffs alleged that it was $730.20 too much, averring that the tumblers properly belonged to Schedule C, and to recover this excess the present action was brought.

Upon the trial the jury found a verdict for the defendant. But upon the trial the counsel for the plaintiffs excepted to the charge of the court, which exception was reserved for argument.

Upon which said argument it occurred as a question whether, according to the true construction of the act of Congress of 30th July, 1846, entitled, " An act reducing the duty on imports, and for other purposes," glass tumblers, the bottoms of which have been smoothed or flattened by the process of cutting or grinding, and glass tumblers which have been engraved on the sides by a similar process, should be charged with the duty of 40 per centum ad valorem, under Schedule B of said act, as glass cut," or with the duty of 30 per centum ad valorem, under Schedule C of said act, as " glass tumblers, plain, moulded or pressed, not cut or punted."

On which question the opinions of the judges of the court were opposed.

Whereupon, on motion of the said plaintiffs, by their counsel, that the point upon which the disagreement hath happened may, during the term, be stated under the direction of the judges, and certified under the seal of this court to the Supreme Court to be finally decided:

It is ordered, that the following statement of facts, which is made under the direction of the judges, be certified according to the request of the said plaintiffs, and the statute in such case made and provided.

*Statement of Facts.*

That the tumblers in question consisted of two kinds, as follows:

1. Glass tumblers, the entire surface of the bottoms of which had been smoothed by the glasscutter, or grinder, previous to their importation by the plaintiffs.

2. Glass tumblers, on the sides of which ornamental figures had been engraved by the glasscutter or engraver previous to such importation,

That the tumblers in question, of the first class, are only known in trade and commerce in the city of New York as " plain tumblers," or as " plain smooth-bottomed tumblers," or as " plain tumblers with flattened-bottoms."

That the tumblers in question of the second class are only known in trade and commerce in said city as " engraved tumblers."

That the tumblers in question (of both classes) are not known in trade and commerce in said city as " cut glass."

That all the material witnesses for the plaintiffs were merchants, importing and dealing in glassware.

That all the material witnesses for the defendant were manufacturers of glassware, or glasscutters and grinders.

That the designation " cut glass," as used in trade and commerce in said city, applies only to tumblers, the sides of which have been cut or ground, and that the importers of glassware and dealers in glassware in said city, do not consider tumblers of the description in question in this suit as coming within the designation, and if they received an order from a customer for " cut glass tumblers," would not regard it as including either smooth-bottomed or engraved tumblers.

That by the testimony of the manufacturers and operatives, glass tumblers are manufactured entirely by the glassblower, or in part by the glassblower and in part by the glasscutter or grinder, and that glass-blowing and glass-cutting are distinct and separate trades, and processes of manufacture.

By the same witnesses. That the bottoms of glass tumblers, manufactured entirely by the glassblower are rough, particularly in the centre, being there broken off from the punt or stick on which made ; and that when sold in this condition such tumblers are known in trade and commerce in the city of New York as " plain " or " plain rough-bottomed tumblers."

By the same witnesses. That, after their completion by the glassblower, such rough-bottomed tumblers frequently pass into the hands of the glasscutter, or grinder, by whom the centre of the bottoms of tumblers is cut or smoothed, for the purpose of removing the particular roughness of that part of the tumbler, and that the process of thus cutting or smoothing the centre of the bottoms of such tumblers is called punting ; and that tumblers manufactured by the glassblower, but the centre part of

the bottoms of which have been so cut or smoothed by the glass-cutter, are known in trade and commerce as "punted" tumblers.

By the same witnesses. That, after their completion by the glassblower, such rough-bottomed tumblers frequently pass into the hands of the glasscutter or grinder, by whom the entire surface of the bottoms of such tumblers is cut or smoothed, and that tumblers manufactured by the glassblower, but the entire bottoms of which have been cut or smoothed by the glasscutter or grinder, are known in trade and commerce as "plain tumblers," or as "plain smoothed-bottomed tumblers," or as "plain tumblers with flattened bottoms," and are similar to the tumblers in question of the first class.

By the same witnesses. That tumblers known in trade and commerce, and amongst manufacturers, as "moulded tumblers," or "pressed tumblers," are also made entirely by the glassblower, and are also rough-bottomed until subjected to the process of punting, or smoothing and cutting above described.

By the same witnesses. That all cutting of glass is done by means of grinding upon wheels, and that there is no such thing as the cutting of glass in the manufacture of "cut glass" in any other way.

By the same witnesses. That the cutting or smoothing of the bottoms of the tumblers in question, (of the first class,) is done by the glasscutter, and that the process of cutting and smoothing is identical with that of punting, except that it extends to the entire surface of the bottom of the tumblers, whereas the "punting" is limited, as above stated, to the centre of the bottom merely.

By the same witnesses. That the process of "punting," and the process of "cutting or smoothing" the bottoms of the tumblers in question, are identical in their operation with that of cutting the sides of tumblers, known in trade and commerce as "cut glass."

It is proved that the time required to cut or smoothe the bottoms of the tumblers in question, (of the first class,) is four or five times as long as that required for "punting" the bottoms of punted tumblers; and that tumblers with the bottoms cut or smoothed cost from 18 to 22 cents per dozen more than punted tumblers.

It was proved that the "punted" tumblers are charged with the duty of 40 per centum ad valorem under the Tariff Act of 1846.

It was proved by the manufacturers and operatives that the process of engraving the tumblers of the second class is similar to that of cutting the tumblers of the first class, but is a finer species of work, requiring more experienced and skilful workmen, and the use of copper wheels instead of wood and stone wheels, and oil and emery, instead of sand.

All which we have caused by these presents to be exemplified, and the seal of the said Circuit Court to be hereunto affixed.

Witness the Hon. Roger B. Taney, Chief Justice of the Supreme Court of the United States, at the city of New York, this first day of December, in the year of our Lord one thousand eight hundred and forty-nine, and of the independence. of the United States the seventy-fourth.

ALEXANDER GARDINER, *Clerk.*

I, Samuel R. Betts, one of the judges of the Circuit Court of the United States, for the Southern District of New York, in the second circuit, do hereby certify, that the foregoing exemplification is in due form of law.

SAMUEL R. BETTS.

It was argued by Mr. Patten for the plaintiff, and Mr. Crittenden (Attorney-General,) for the defendant.

The points for the plaintiffs were as follows:—

1. That the tariff laws are to be construed according to the commercial sense of the terms used in them. Lee *v.* Lincoln, 1 Story, 610; U. S. *v.* 112 Casks Sugar, 8 Pet. 277; Bacon *v.* Bancroft, 1 Story, 341; U. S. *v.* Wigglesworth, 2 Story, 369; Henry W. Sill et al. *v.* Cornelius W. Lawrence, Collector, MS., before Justice Nelson, U. S. C., New York.

2. That statutes laying restrictions upon trade, or which lay an excise or tax upon it, are to be construed strictly. Sewall *v.* Jones, 9 Pick. 412; and that the court cannot, therefore, look for the intent of the framers beyond the ordinary and natural import of the language used.

3. That the words " plain tumblers," in the second clause upon this subject, in schedule C, are to be taken as used in commerce. Tariff Laws of July, 1846, p. 42; schedule B, " glass cut," p. 44; schedule C, p. 45, Boston edition; Tariff, 1842, p. 552, sec. 5.

4. That in commerce the tumblers in question are known as " plain tumblers."

5. That no *other* tumblers, either in commerce or manufacture, are known simply as *plain* tumblers. U. S. *v.* Wigglesworth, 2 Story, 369.

*Mr. Crittenden,* for the defendant, contended—

1. That whether the tumblers in question were or were not of " glass cut," was a question of fact. Upon that question the evidence is clear in favor of the verdict.

That tumblers of glass punted are " glass cut " is undeniable upon the evidence of the manufacturers; and upon the same evidence it is equally clear that tumblers of glass with orna-

mental figures engraved on them are " glass cut," and so both descriptions of the tumblers, about which the suit was brought, are within schedule B, and subject to a duty of forty per cent. ad valorem.

The descriptions, in schedule B, of " glass cut," and in schedule C, of " glass tumblers, plain, moulded, or pressed, not cut or punted," do not leave room for argument.

Both classes of the imported tumblers in question had been cut, punted, smoothed, and ground by the glasscutter; none of them were plain and uncut, as they were from the hands of the glassblower, and therefore cannot be brought to the lower duty of thirty per cent. ad valorem according to schedule C.

The maxim, " Cuique in sua arte credendum est," applies to the evidence of the manufacturers of glass introduced by the collector.

2. Upon the statements appearing upon the record, there is no ground for a new trial.

It is not possible to mistify and make intricate the matters of fact. That the tumblers of glass in question were " glass cut," tumblers of glass punted, tumblers with ornamental figures cut upon them, and not " glass tumblers, plain, moulded, or pressed, not cut or punted," cannot be made more lucid by argument than by the testimony given. Importing merchants cannot demolish facts, change the qualities and substance of things, alter the descriptions and meaning of schedules B and C, in the tariff of 1846, nor evade their effect by arbitrary names, which they may think fit to give to things imported by them.

Mr. Justice DANIEL delivered the opinion of the court.

This was an action brought by the plaintiffs, importers of glassware, against the defendant as collector of the port of New York, to recover a certain amount of money paid under protest to the defendant as collector, for duties exacted by him upon glass tumblers imported by the plaintiffs at the period set forth in an exhibit filed in the cause, by which are also shown, the duties charged by and paid to the defendant, and the amount claimed by the plaintiffs, as having been improperly exacted; this last amount, consisting in each instance of the difference between the duty of 40 per centum ad valorem, charged under schedule B of the Tariff Act of July 30th, 1846, as on importations of " glass cut," and the duty of 30 per centum ad valorem, at which rate the plaintiffs claimed to enter their importations of glass above-mentioned, under schedule C of the same act of Congress, as " glass tumblers plain, moulded, or pressed, not cut or punted."

The question of law upon the construction of the Statute

of 1846 upon which the judges differed in opinion, and the facts of the case out of which that question has grown, cannot be stated with greater clearness or with more succinctness of form, than they have been in the certificate from the Circuit Court.

This cause having been tried before his honor Justice Nelson, on the 3d of November, 1848, the jury impanelled returned a verdict for the defendant. The counsel for the plaintiff having excepted to the charge of the presiding judge on the trial, the cause was heard upon the exception reserved for the plaintiff, involving the question whether, according to the true construction of the Act of Congress of 30th of July, 1846, entitled " An act reducing the duty on imports and for other purposes," glass tumblers, the bottoms of which have been smoothed or flattened by the process of cutting or grinding, and glass tumblers which have been engraved on the si .es by a similar process, should be charged with the duty of 40 per centum ad valorem, under schedule B of said act, as ".glass cut," or with the duty of 30 per centum ad valorem, under schedule C of said act, as " glass tumblers plain, moulded, or pressed, not cut or punted."

On which question the opinion of the judges of the court were opposed.

Whereupon, on motion of the said plaintiffs by their counsel, that the point upon which the disagreement hath happened may, during the term, be stated under the direction of the judges, and certified under the seal of this court to the Supreme Court to be finally decided.

It is ordered, that the following statement of facts, which is made under the direction of the judges, be certified according to the request of the said plaintiffs, and the statute in such case made and provided.

### Statement of Facts.

That the tumblers in question consisted of two kinds, as follows:

1. Glass tumblers, the entire surface of the bottoms of which had been smoothed by the glasscutter or grinder, previous to their importation by the plaintiffs.

2. Glass tumblers, on the sides of which ornamental figures had been engraved by the glasscutter or engraver, previous to such importation.

That the tumblers in question of the first class, are only known in trade and commerce in the city of New York as " plain tumblers," or as "plain smooth-bottomed tumblers," or as " plain tumblers with flattened bottoms."

That the tumblers in question of the second class, are only

known in trade and commerce in said city as " engraved tumblers."

That the tumblers in question (of both classes) are not known in trade and commerce in said city as " cut glass."

That all the material witnesses for the plaintiffs were merchants, importing and dealing in glassware.

That all the material witnesses for the defendant were manufacturers of glassware, or glasscutters and grinders.

That the designation " cut glass," as used in trade and commerce in said city, applies only to tumblers the sides of which have been cut or ground, and that the importers of glassware and dealers in glassware in said city, do not consider tumblers of the description in question in this suit, as coming within the designation, and if they received an order from a customer for " cut glass tumblers," would not regard it as including either smooth-bottomed or engraved tumblers.

That by the testimony of the manufacturers and operatives, glass tumblers are manufactured entirely by the glassblower, or in part by the glassblower and in part by the glass-cutter or grinder, and that glass-blowing and glass-cutting are distinct and separate trades, and processes of manufacture.

By the same witnesses. That the bottoms of glass tumblers manufactured entirely by the glassblower, are rough, particularly in the centre, being there broken off from the punt or stick on which made; and that when sold in this condition, such tumblers are known in trade and commerce in the city of New York as " plain" or " plain rough-bottomed tumblers."

By the same witnesses. That, after their completion by the glassblower, such rough-bottomed tumblers frequently pass into the hands of the glasscutter, or grinder, by whom the centre of the bottoms of such tumblers is cut or smoothed, for the purpose of removing the particular roughness of that part of the tumbler, and that the process of thus cutting or smoothing the centre of the bottoms of such tumblers is called punting; and that tumblers manufactured by the glassblower, but the centre part of the bottoms of which have been so cut or smoothed by the glasscutter, are known in trade and commerce as " punted" tumblers.

By the same witnesses. That, after their completion by the glassblower, such rough-bottomed tumblers frequently pass into the hands of the glasscutter or grinder, by whom the entire surface of the bottoms of such tumblers is cut or smoothed, and that tumblers manufactured by the glassblower, but the entire bottoms of which have been cut or smoothed by the glasscutter or grinder, are known in trade and commerce as " plain tumblers," or as " plain smoothed-bottomed tumblers," or as " plain

tumblers with flattened bottoms," and are similar to the tumblers in question of the first class.

By the same witnesses. That tumblers known in trade and commerce, and amongst manufacturers as "moulded tumblers," or "pressed tumblers," are also made entirely by the glassblower; and are also rough-bottomed until subjected to the process of punting, or smoothing and cutting above described.

By the same witnesses. That all cutting of glass is done by means of grinding upon wheels, and that there is no such thing as the cutting of glass in the manufacture of "cut glass" in any other way.

By the same witnesses. That the cutting or smoothing of the bottoms of the tumblers in question, (of the first class,) is done by the glasscutter, and that the process of cutting and smoothing is identical with that of punting, except that it extends to the entire surface of the bottom of the tumblers, whereas the "punting" is limited, as above stated, to the centre of the bottom merely.

By the same witnesses. That the process of "punting," and the process of "cutting or smoothing" the bottoms of the tumblers in question, are identical in their operation with that of cutting the sides of tumblers, known in trade and commerce as "cut glass."

It was proved that the time required to cut or smoothe the bottoms of the tumblers in question, (of the first class,) is four or five times as long as that required for "punting" the bottoms of punted tumblers; and that tumblers with the bottoms cut or smoothed cost from 18 to 22 cents per dozen more than punted tumblers.

It was proved that the "punted" tumblers are charged with the duty of 40 per centum ad valorem under the Tariff Act of 1846.

It was proved by the manufacturers and operatives, that the process of engraving the tumblers of the second class is similar to that of cutting the tumblers of the first class, but is a finer species of work, requiring more experienced and skilful workmen, and the use of copper wheels instead of wood and stone wheels, and oil and emery instead of sand.

The question referred to this court by the aforegoing certificate, and the solution of that question, are supposed to lie within a comparatively narrow compass. In the construction of the Act of Congress of July 30th, 1846, as in that of every other statute, one cardinal rule must govern, and it is this; that wherever the will or intention of the lawmaking power is declared in plain and unequivocal terms, that will or intention must be followed — absolutely followed. It would not be admissible

under such circumstances, to attempt a control or modification of that will, by speculations of policy or by facts or opinions derived *aliunde*, as such a proceeding would in effect operate a repeal of the positive law, or the abrogation of a superior power, by what were the just and regular subjects of its operation. Where a statute may be ambiguous in its language, or may have reference to facts or conclusions dependent on usage, the influence of opinion or the proof of established usage may be proper or even indispensable, in fixing the just interpretation of the law, but it is only in instances like these last mentioned, that such a rule of interpretation can be tolerated.

The question presented upon the certificate from the Circuit Court will be considered, 1st, with reference to the language of the Tariff Act of July 30th, 1846; and next upon the import of the facts proved in the case, upon the hypothesis that those facts could at all affect the rule of interpretation.

In schedule B, part of the act above-mentioned, laying an impost of 40 per centum on all articles embraced within it, the only description of glass mentioned, is that designated as "*glass cut.*" Its distinguishing characteristic, that brings the article within the purview of that schedule is, that it be *cut;* the figure, or the extent in which the process of cutting should have been applied, was nowhere defined by the statute; and it must be obvious, that any attempt to define or describe that which may, and must indeed be as diverse as the skill, the taste, or the prospect of profit on the part of the manufacturer, would have been utterly nugatory. But it could be easily understood, both by the law-maker and by others, that the beauty, the quality, and the price of glass are heightened by the process of cutting, and it was equally notorious or susceptible of proof, that the process of cutting is accomplished by but one species of operation, viz.: the operation of grinding. It would appear plain then, that all glass subjected to this one known process, as being enhanced in value, was designed to fall within the description in the statute of "*glass cut.*"

The articles of glassware enumerated in schedule C, as being subject to an impost of 30 per centum, are thus described, viz.: glass tumblers plain, moulded, or pressed, "*not cut or punted.*" Upon the language of the description just quoted it would seem too clear for cavil, that *cut* or *punted* tumblers, cannot be placed in the same class with those that are enumerated as "*plain, moulded, or pressed,*" but are carefully contradistinguished from these last denominations. *Cut* or *punted* tumblers, therefore, even if these two terms could be understood as having different significations and were not applicable merely to different degrees of cutting or grinding, do not fall under the lower rate of duty — but all

*cut* tumblers, no matter in what part, in what figures, or to what extent they are cut, and all *punted* tumblers, were by the act of Congress of July 30th, 1846, subject to a duty of 40 per cent. upon the proper construction of the language of the statute. An effort has been made to control this language, by introducing the opinions of certain dealers in glass, and of other persons in the city of New York, to show that tumblers, the entire bottom of which are ground or smoothed by the glasscutter, and tumblers the sides of which are wrought and ornamented by the same means, are not considered as *cut*, but are held to be the first *plain*, and the second *engraved* tumblers. The sum of the argument thus attempted, when tested by common sense, amounts to this: That the process of grinding or cutting, when applied to the entire surface of the bottom of tumblers, or to the ornamenting of their sides, although it be the identical process and the only one by which cut glass is manufactured, is not cutting, but something less; and that the manufacturing of cut glass, means something else or beyond the only process by which cut glass is ever made. The integrity or indeed the intelligibility of this argument, this court are unable to perceive. It cannot be sustained in opposition to the language of the statute, in violation of consistency, and against the weight of the testimony in the cause, upon mere arbitrary and unfounded assumption, or upon opinion entertained within a limited theatre, and this by persons whose interests are involved in and would be advanced by that assumption. The weakness of this assumption is further exposed by recurrence to facts stated by manufacturers and found in the record, in strict conformity with which, the distinction made in the statute appears to have been taken.

Thus it is proved, that tumblers are manufactured either entirely by the glassblower, or in part by the glassblower, and in part by the cutter or grinder; and *that glass-blowing and glass-cutting are distinct and separate trades and processes of manufacture.* It is further shown, in proof, that the bottoms of tumblers manufactured entirely by the glassblower, are rough in the centre, being there broken off from the *punt* or stick in which they are made; that after their completion as far as can be by the glassblower, they pass into the hands of the cutter or grinder, by whom the centre of the bottom is cut or smoothed, and that the process of thus cutting or smoothing the centre of the bottoms of these tumblers, is called *punting*. Again it is in proof, that the tumblers, as made by the glassblower, are frequently passed to the cutter or grinder, by whom the *entire surface* of the bottom is cut or smoothed; and it is the tumbler, thus cut and finished by the glasscutter, that is said to be known in the trade in

New York as "the plain tumbler," or as the "plain, smoothed-bottomed tumbler." It is also proved, that the cutting and smoothing the bottom of the tumbler is effected by the identical process which is applied in *punting*, the only difference consisting in the fact, that in the former operation it extends to the *entire surface*, instead of being limited to the point at which the tumbler was separated from the punt or stick. "Cut or punted tumblers are expressly distinguished in the statute from glass tumblers, *plain, moulded, or pressed.*" Punted tumblers, it is clearly shown by the facts certified, are made by the operation of cutting or grinding the centre of the bottom; the smoothing of the entire bottoms of tumblers. is merely the application of the same process. to a greater extent; how this extended application can cause those tumblers subjected to it to be considered less as *cut glass*, than if they were merely punted, or cut at a small point of the bottom, presents a problem not easy of solution. Could these tumblers, with the entire bottom or sides cut or ground, be, with any propriety of language, denominated "plain tumblers," or "plain, smoothed-bottomed tumblers," they still are not the less "plain tumblers," or "plain, smoothed-bottomed tumblers," or "plain tumblers with flattened bottoms," or "engraved tumblers" so constituted by the operation of *cutting or grinding*. In this view of the question certified, it is the opinion of this court, that glass tumblers, having the entire surface or bottom smoothed or polished, or their sides figured or ornamented by cutting or grinding, come regularly within the operation of schedule B of the Tariff Act of July 30th, 1846, and are, within the intent and meaning of that schedule, subject to a duty of 40 per centum. *ad valorem*, as *glass cut;* and we order it to be so certified to the Circuit Court of the United States, for the Southern District of New York.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and on the point or question on which the judges of the said Circuit Court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court, that, according to the true construction of the act of Congress of 30th July, 1846, entitled "An Act reducing the duty on imports, and for other purposes," glass tumblers, the bottoms of which have been smoothed or flattened by the process of cutting or grinding, and glass tumblers which have been

engraved on the sides by a similar process, should be charged with the duty of 40 per centum *ad valorem,* under schedule B of said act, as cut glass. Whereupon, it is now here ordered and adjudged by this court that it be so certified to the said Circuit Court.