## SIMPSON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1923. Rehearing Denied July 2, 1923.)

No. 3916.

**1. Indictment and information ⬱71 — Indictment held sufficient.**

An indictment is sufficient if its meaning is plain, and a person of ordinary intelligence should not be misled as to the nature of the charge, and if the averments are sufficient to enable defendant to prepare his defense, and in the event of acquittal to plead the judgment in bar of a second prosecution for the same offense.

**2. Criminal law ⬱736(2) — Declarations of conspirator held admissible against others.**

Where, an indictment charged a general conspiracy to bring liquor into Alaska from foreign waters by means of boats, the fact that a boat operated by defendants, after loading with liquor in Canadian waters, was seized with the cargo by Canadian authorities for violation of the navigation laws, did not require the court to hold as matter of law that the conspiracy was ended, so as to render declarations made by one of the alleged conspirators to the Canadian officers inadmissible against the others.

**3. Criminal law ⬱736(2) — Whether conspiracy had ended before declarations made by conspirator may be question for jury.**

Where the question whether a conspiracy had ended before the making of statements by one of the alleged conspirators, offered in evidence, is doubtful, it is one for the jury.

**4. Criminal law ⬱1163(3) — Error in admission of evidence must be shown to be prejudicial to warrant reversal.**

In the federal appellate courts, under amended Judicial Code, § 269 (Comp. St. Ann. Supp. 1919, § 1246), the burden is on the plaintiff in error to show that error in the admission of evidence was prejudicial.

Rudkin, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Territory of Alaska; Thos. M. Reed, Judge.

Criminal prosecution by the United States against J. B. Simpson. Judgment of conviction, and defendant brings error. Affirmed.

The plaintiff in error was convicted under an indictment which charged that he and De Liere and Brinket conspired to violate the National Prohibition Act (41 Stat. 305) by illegally obtaining possession of, dealing in, selling, and bringing into the territory of Alaska intoxicating liquors; that the purpose and object of the conspiracy was that the defendants should leave the port of Ketchikan, Alaska, bound for foreign waters on licensed American gas boats of at least 10 tons burden, without clearing from the United States customs, and without having a regularly indorsed master on board as provided by law, and proceed in said gas boats to foreign waters, securing a cargo of intoxicating liquors, and return to ports in the territory of Alaska with such cargo of intoxicating liquors, without entering at the United States customs, as provided by law, such intoxicating liquors to

───────────────
⬱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be possessed, sold, and dealt in as aforesaid in violation of the National Prohibition Act. It was shown in evidence that on the night of November 14, 1921, the plaintiff in error with De Liere and Brinket, sailed on the Sylph, an American gas power boat, documented in the customs house at Ketchikan starting from an isolated gravel dock in Ketchikan and bound for British Columbia. Alex Runge, who was the duly indorsed master of the Sylph, was not on board, On November 15, 1921, the Sylph was met in British Columbia waters by the Canadian boat, Rosina B., and thereupon a cargo of liquor was transferred by Simpson, De Liere, and Brinket, and the crew of the Rosina B., to the Sylph for transportation to Alaska. Later, while making for the American boundary, the Sylph was overhauled by the Canadian coast guard ship, Thiepval. The Sylph endeavored to escape, but after a chase and after seven shots had been fired from the Thiepval's three-pounder Hotchkiss gun, the Sylph hove to and was taken into possession by the officers of the Thiepval. The plaintiff in error informed the captain of the Thiepval that De Liere was the captain of the Sylph. The Thiepval took De Liere aboard and took the Sylph in tow. On the following morning, De Liere attempted to release the Sylph by offering to deposit $800 with the collector of customs at Prince Rupert. The defendants were not detained by Canadian authorities and were permitted to return to Ketchikan. Before the trial, De Liere died and the indictment as to Brinket was dismissed.

John J. Sullivan, of Seattle, Wash., and A. H. Zeigler, of Ketchikan, Alaska, for plaintiff in error.

A. G. Shoup, U. S. Atty., of Ketchikan, Alaska, and L. O. Gore, Asst. U. S. Atty., of Juneau, Alaska.

Before GILBERT and RUDKIN, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] We find no merit in the contention that the indictment was insufficient. It advised the defendants with reasonable certainty of the crime with which they were charged, Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278. Its meaning is plain, a person of ordinary intelligence could not be misled as to the nature of the charge, and the averments are sufficient to enable the defendant to prepare his defense and, in the event of acquittal, to plead the judgment in bar of a second prosecution for the same offense. Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; 5 R. C. L. 1080.

[2] The contention principally relied upon is that it was error to refuse to direct the jury to disregard any statement or admissions made by De Liere to the Canadian officers after the chase and capture of the Sylph, for the reason that the plaintiff in error could not be affected by any such admissions made after the conspiracy had ended. The court, in instructing the jury, charged them that such statements, if made after the conspiracy had been abandoned, were not admissible and should not be considered by them, but charged them that, if they found that such statements were made while the design or purpose of the conspiracy was being carried out, they might be taken into consideration in determining the scope, design, and purpose of the conspiracy, and the defendant's connection therewith. Evidence of the statements so made by De Liere was admitted without the interposition of the objection that is now urged against its admissibility. The evidence so

admitted was that, on the morning following the capture of the vessel, De Liere stated to the Canadian collector of customs that he had been hired for $150 by the plaintiff in error to make the trip and to bring the liquor over, and that the hiring had taken place in Ketchikan; also that De Liere told the captain of the Thiepval that the plaintiff in error was financing the trip, and that the liquor all belonged to him, and that the plaintiff in error had promised to give him (De Liere) $150 to make the trip; and that De Liere further said that he was going to make an effort to get the boat released, that he was going to have a deposit of $800 put up, and that the $800 was coming from the plaintiff in error.

There can be no question of the general rule that, after the abandonment of a conspiracy, the acts or declarations of a conspirator are not admissible against his coconspirators. "However there is a distinction between an abandonment of a conspiracy and the abandonment of the object thereof, and acts or declarations of coconspirators are admissible where, at the time they were done or made, although the object had been abandoned, the conspiracy continued for the purpose of avoiding detection or exposure." 16 C. J. 663. The contention that the declarations here in question were inadmissible is sustainable only on the theory that the evidence on the trial was such that it became the duty of the court to declare as a matter of law that the conspiracy had been abandoned before the declarations were made. We think it very clear that it would have been error for the court to have so ruled. The indictment does not charge that the conspiracy was one to use the Sylph on a single voyage to carry a single cargo of liquors into Alaska in violation of the National Prohibition Act. It was charged as a general conspiracy, a conspiracy to depart from the port of Ketchikan "on licensed American gas boats" of at least 10 tons burden and proceed therein "to foreign waters" to secure a cargo of intoxicating liquors and to return "to ports in the territory of Alaska."

There is no evidence whatever that on the morning following the capture of the Sylph any of the parties to the conspiracy had abandoned the common purpose. On the contrary, the evidence indicates that they contemplated advancing the fine necessary to release the Sylph. The trial court had no means of knowing what they intended to do with the Sylph. The jury may have found that they intended to resume the illegal traffic in which they had been engaged. The Sylph was not seized for any act of the conspirators against the laws of the United States. It was seized and held only as security for fines and penalties incurred for violation of Canadian navigation laws. None of the conspirators was individually charged with an offense against the Canadian laws. On arrival at a Canadian port, they were left free to go where they would. The purpose of the conspiracy was not necessarily frustrated by the mishap that had occurred to them. All that had been interposed to prevent their carrying out the purpose of the conspiracy was the fine imposed on the Sylph and the seizure of the cargo.

[3] The most that can be claimed by the plaintiff in error is that the evidence as to the preliminary fact on which the admissibility of

De Liere's declarations depended, was doubtful. In such a case, the question whether the conspiracy had come to an end at the time when the declarations were made is a question for the jury. People v. Kauffman, 152 Cal. 331, 92 Pac. 861; Gonzalus v. State, 7 Okl. Cr. 444, 123 Pac. 705; Gilbert v. Commonwealth, 111 Ky. 793, 64 S. W. 846; 16 C. J. sec. 2286. But, even if the conspiracy had been abandoned when the declarations were made, their admission was not reversible error. They were but cumulative evidence of the complicity of the plaintiff in error in the conspiracy. That he was engaged in the conspiracy was fully established by other testimony, and can admit of no doubt. The plaintiff in error, in testifying on his own behalf, admitted that after the Sylph was captured he said to De Liere, when De Liere claimed that he had lost everything he had, "I'll help you out," and he made no denial of the testimony of Runge, one of the owners of the Sylph, that after returning to Ketchikan he told Runge not to worry about the boat; that he would pay the fine, whatever it might be.

[4] In reviewing a judgment in an appellate court, the burden is on the plaintiff in error to show that error in the admission of testimony was prejudicial, Rich v. United States (C. C. A.) 271 Fed. 566; Trope v. United States (C. C. A.) 276 Fed. 348; Hall v. United States (C. C. A.) 277 Fed. 19; Haywood v. United States (C. C. A.) 268 Fed. 795. In the case last cited, Judge Baker, referring to Act Feb. 26, 1919, amending Judicial Code, § 269 (Comp. St. Ann. Supp. 1919, § 1246), said:

"We gather the congressional intent to end the practice of holding that an error requires a reversal of the judgment, unless the opponent can affirmatively demonstrate from other parts of the record that the error was harmless, and now to demand that the complaining party show to the reviewing tribunal from the record as a whole that he has been denied some substantial right whereby he has been prevented from having a fair trial."

In Fitter v. United States, 258 Fed. 567, 169 C. C. A. 507, Judge Rogers said:

"In a case where the evidence of guilt is so overwhelming, the objections of the defendant must be serious and clearly prejudicial to justify the court in reversing the judgment and compelling the government to put this man again on his trial."

In Williams v. United States (C. C. A.) 265 Fed. 625, Judge Hook said:

"Whether prejudice results from the erroneous admission of evidence at a trial is a question that should not be considered abstractly or by way of detachment. The question is one of practical effect, when the trial as a whole and all the evidences of the proofs are regarded."

The judgment is affirmed.

RUDKIN, Circuit Judge (dissenting). The admission in evidence of a statement or declaration, made by a third party, to the effect that the defendant had employed him to transport the liquor in controversy for a consideration of $150, was manifest error, in any conceivable aspect of this case; for, assuming that there was a conspiracy, as

charged in the indictment, the sole object of that conspiracy, as disclosed by the testimony, was the transportation of this particular cargo of liquor to Ketchikan, and when the Canadian custom officials seized the cargo and apprehended the parties the conspiracy ended by failure, as fully and completely as if one of the parties had died then, instead of some months later. Furthermore, the statement or declaration was not in execution or furtherance of any conspiracy, past or pending, but was a mere narrative of a past fact. For these reasons the testimony should have been excluded in the first instance, and, after its admission, the very least the court could have done to repair the error was to strike it from the record and instruct the jury to disregard it. If any authority is needed in support of so elementary a proposition, see Logan v. United States, 144 U. S. 263, 308, 12 Sup. Ct. 617, 36 L. Ed. 429.

Nor can I agree with the majority that the proof of guilt was so conclusive that the error was not prejudicial. Had the defendant been simply charged with the possession or transportation of intoxicating liquor, I might assent to this conclusion; but the charge was a conspiracy to commit a crime, and there was no direct testimony tending to establish that charge. The conclusion of the majority seems to be based upon the erroneous assumption that a conspiracy to commit a crime must necessarily exist whenever two or more persons are in anywise implicated in its commission. But, if this be true, section 332 of the Criminal Code (Comp. St. § 10506), declaring, "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal," is without legal significance. A judgment should not be reversed for mere technical error, but to condone an error such as this is subversive of the constitutional right of trial by jury.