## NORTH WESTERN REFRIGERATOR LINE CO. v. ERVIN et al. *

### No. 7678.

Circuit Court of Appeals, Fifth Circuit.
June 21, 1935.

Motion for Award of Damages and Rehearing Denied July 24, 1935.

*Writ of certiorari denied 56 S. Ct. 143, 80 L. Ed. ——.

Harry Eugene Kelly, of Chicago, Ill., and Albert S. Bozeman, of Meridian, Miss., for appellant.

C. C. Miller, of Meridian, Miss., and Carl Fox and Rufus Creekmore, both of St. Louis, Mo., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

The Mobile & Ohio Railroad Company, through its receivers, sued the North Western Refrigerator Line Company to recover compensation for the excess of empty over loaded mileage that it had transported over its railroad refrigerator cars which it alleged were owned by the defendant. The action relates entirely to interstate transportation, and was brought to enforce payment according to the provisions of items 108 and 112 of Mileage Tariff No. 7-G, I. C. C. No. 2209. The plaintiff was a subscriber to those items. Rule 5 of item 108 is printed in the margin.[1] The rate required by that rule to be paid for excess empty mileage is 11 cents per car per mile. Under item 112 the mileage allowance which the railroad carrier is required to pay on refrigerator cars of the kind here in question is 2 cents per car per mile. The defendant pleaded the general issue, and, in addition, denied specially that it was responsible for any excess empty mileage, because it said the refrigerator cars were in the possession and under the control of the Chicago & North Western Railway Company, and that the legal title to them was in three trustees. Over the defendant's objection and exception, the trial court admitted item 108 in evidence, permitted the plaintiff's car accountant Schrader to testify to the excess empty car mileage as shown by his monthly records and reports; and at the close of the evidence directed a verdict in favor of the plaintiff for the full amount sued for.

On this appeal by the defendant the material assignments of error are that the court erred (1) in not holding that the special plea had been proven, or at least in not submitting the defense raised thereby to the jury; (2) in admitting item 108 in evidence; and (3) in permitting Schrader to testify to the excess empty car mileage as shown by his monthly records and reports.

The defendant was the owner of the refrigerator cars in question. It placed them at the disposal of the Chicago & North Western Railway Company whenever the latter needed them, but at other times it

---

1 "*Equalization of Mileage.*—Freight cars of private ownership, other than tank cars of private ownership * * * will be moved empty without charge either to the station or junction point where received under load or under instructions from car owners, to other stations, or for delivery to connecting lines, except that the aggregate mileage of each owner's cars must be equalized as between empty or loaded movement by the owner, either by mileage equivalent in loaded movement or by payment for the excess mileage at rate specified in tariffs or classifications lawfully on file with the Interstate Commerce Commission or State Railroad Commission, plus the mileage that has been paid on such excess empty mileage whenever the empty excess mileage warrants such action.

"Car owners must assume responsibility for any excess mileage resulting from improper delivery of their cars by connecting lines."

let them out for use to other railroad companies. The three trustees referred to in the special plea were no more than mortgagees. The period covered by this litigation is from March, 1930, to June, 1932. During that time the defendant furnished refrigerator cars to a corporation engaged in shipping bananas by the carload from New Orleans to Chicago. The defendant's cars were taken at Chicago and moved empty to New Orleans where they were loaded. The plaintiff carried them as far south as Meridian, Miss., and there delivered them to a connecting line which completed the journey to New Orleans, and received loaded cars at Meridian for transportation to Chicago. For several years the loaded mileage exceeded the empty mileage, but beginning in March, 1930, the empty mileage continuously exceeded the loaded mileage, as many of the loaded cars were shipped north over competing lines. In May, 1930, the excess empty mileage was 125,000 miles, and it was never afterwards less than that. Under the mileage tariff the plaintiff was obliged to pay 2 cents per car per mile for empty cars although it received no loaded cars. It continued to make these payments monthly, but in 1931 began to complain and to insist upon the mileage being equalized, either by increase of loaded movement or by payment for the excess empty mileage. The defendant without once questioning the accuracy of the monthly reports which it received regularly, and based on which it collected regularly the 2 cents per car per mile, pleaded for more time in which to equalize by supplying equivalent mileage in loaded movements. Finally in 1932 peremptory demand by the plaintiff for payment was refused. Schrader, the car accountant, produced at the trial his monthly reports and submitted them to the defendant's counsel for inspection and examination. He testified that these were made up from conductor's wheel reports and that the latter disclosed in detail the movements of all freight cars regardless of ownership, each covering a two-day period; that his monthly reports were made up on separate sheets for each car owner by numerous clerks under his personal supervision.

■ The trial court rightly rejected the defense set forth in the special plea and held that the defendant was liable because it was the owner of the refrigerator cars in question, and was in possession of them when it rented them out to the banana shipper. Possession, we think, governs in a case like this, as it is not unusual for the owner of railroad cars, or for that matter of other property, to borrow money with which to pay the purchase price. Although the Chicago & North Western Railway Company had the prior right to the use of the defendant's cars, it did not have the right of exclusive use. A significant thing is that the payments by the plaintiff for the mileage were made to and kept by the defendant. The refrigerator cars must be held to be cars of private ownership within the meaning of item 108. It follows from this that the plaintiff was obliged to require the defendant to equalize the aggregate mileage as between empty and loaded movement, either by mileage equivalent in loaded movement or by payment of the excess mileage, in accordance with the railroad tariffs on file with the Interstate Commerce Commission. That commission is given the authority to regulate car service by interstate railroads and to fix the compensation to be paid for the use of any car not owned by the carrier using it. 49 USCA § 1 (14). Mileage Tariff No. 7-G, of which item 108 is a part, has the force of law, and it is well settled that a railroad carrier has the power and is under the duty to enforce it as against a shipper. Louisville & N. R. Co. v. Central Iron Co., 265 U. S. 59, 65, 44 S. Ct. 441, 68 L. Ed. 900. Although apparently there is no case in point, we have no doubt that the same rule applies in the case of a private car owner. But the defendant says that rule 5, item 108, is too vague to be enforced, because in the first place the amount to be paid might well be only 2 cents per car per mile, and in the second place there is no time fixed within which equalization by payment must be made. There does not seem to be room for doubt that the payment required is the rate specified in the classification of 11 cents plus the mileage of 2 cents which the railroad company had paid as required by item 112. As to the second objection, we think it is sufficient to say that the intention was to give the private car owner a reasonable time within which to equalize the empty mileage by loaded mileage, and failing in that to authorize the carrier to proceed to enforce payment. There is no question that in this case the defendant was given ample time, especially since it finally denied that it was liable at all.

■ The objection to allowing Schrader, the car accountant, to testify from his car

reports is extremely technical. The defendant must have known that the excess empty mileage was at least as great as it was shown to be by the monthly reports which it received and upon which it secured payment. There is nothing in the argument that the defendant might have thought part of the payment was being made for loaded mileage, inasmuch as the reports showed both loaded and empty mileage in parallel columns. The conductors' wheel reports were available to the defendant, but it never requested permission to examine them. In the circumstances disclosed, we think it was within the discretion of the trial court to permit Schrader, under whose supervision the monthly reports were made, to testify from them without requiring the production in court of the indiscriminate mass of daily reports made by the conductors. Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299; Rowland v. Boyle and St. L. & S. F. R. Co., 244 U. S. 106, 37 S. Ct. 577, 61 L. Ed. 1022; Jennings v. United States (C. C. A.) 73 F.(2d) 470; 2 Wigmore § 1230.

The judgment is affirmed.