## VALLI et al. v. UNITED STATES.*

### No. 3244.

Circuit Court of Appeals, First Circuit.

Jan. 26, 1938.

MORTON, Circuit Judge, dissenting.

Essex S. Abbott, of Boston, Mass. (Joseph V. Carroll, of Boston, Mass., on the brief), for appellants.

Robert W. Meserve, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal by the respondents Valli, Bacchi, and Goldstein from a judgment of the District Court of Massachusetts following a verdict of guilty of a charge of conspiracy to carry on the business of distillers without having given a bond as required by law, and with intent to defraud the United States of the tax on the spirits distilled by the conspirators; to illegally make or ferment mash fit for distillation and for the production of spirits or alcohol; and to remove distilled spirits on which the tax had not been paid to a place other than a distillery warehouse or other bonded warehouse as provided by law, and to conceal the distilled spirits so removed.

Twenty-five alleged conspirators were indicted. On motion of counsel for the government an entry of nol. pros. was made as to seven of the respondents, four were found not guilty by order of the court, one pleaded nolo contendere, and one was not tried because of illness; the remainder, including the appellants, were all found guilty under each of the three counts of the indictment by a verdict of a jury. Valli, Bacchi, and Goldstein alone appealed.

Error was assigned as to the admission of the testimony of two government officials as to conversations between the appellants themselves and between the appellants and certain of the other alleged conspirators heard by means of the tapping of telephone wires.

There was also assigned as error the admission of the testimony of an employee of the New England Telephone & Telegraph Company relating to the records of the Telephone Company, which were produced by him, showing the installation of telephones at certain places of business between which the government agents, by tapping the telephone wires, overheard conversations material to the charges in the indictment against the appellants, which records were made and kept in the usual course of the business of the Telephone Company, and to the admission of the registration cards of certain of the alleged conspirators at the Manger Hotel in Boston, and the records of telephone calls made from the rooms occupied by certain of the conspirators to other numbers shown by the records of the Telephone Company to have been installed and used by one or more of the coconspirators.

Another error assigned related to the admission of the evidence of one Richter, who was a dealer in molasses and yeast, as to the sale of large quantities of molasses and yeast to one of the conspirators or their servants and agents. From the quantity of the molasses and yeast sold and delivered at one time and the frequent sales, it is claimed the jury was warranted in finding that it was used for manufacturing

690

alcohol for distillation in a still later seized by government officials.

No question is raised that the evidence obtained by the tapping of the wires, together with the other evidence in the case, if held to be admissible, was not sufficient to warrant a verdict of guilty as to the appellants, though the nature of the evidence received over the telephone wires is not before us.

The chief contention of the appellants is directed to the admissibility of intercepted conversations by means of the tapping of the telephone wires. The objection that the parties speaking were not identified at the time is without merit. Fabacher v. United States, 5 Cir., 84 F.2d 602, 604; People v. Dunbar Contracting Co., 215 N.Y. 416, 109 N.E. 554. Counsel for the appellants strenuously contend that both section 605 of the Federal Communication Act, 48 Stat. 1103, 47 U.S.C.A. § 605, and section 99 of chapter 272 of the Massachusetts General Laws (Ter.Ed.), relating to eavesdropping, which provides that "whoever * * * secretly overhears * * * any spoken words * * * by using * * * a dictagraph * * * or by tapping any wire, with intent to procure information concerning any official matter or to injure another, shall be guilty of the crime of eavesdropping," render any evidence so obtained inadmissible.

Since this case was argued before this court, the Supreme Court has decided the case of Nardone et al. v. United States, 58 S.Ct. 275, 82 L.Ed. ——, December 20, 1937, in which it reversed the judgment of the Circuit Court of Appeals for the Second Circuit, U. S. v. Nardone, 90 F.2d 630, and held that section 605 of the Communication Act, 47 U.S.C.A. § 605, applied to federal officers, and any evidence obtained by them by tapping telephone wires in violation of that act was inadmissible in a federal court; but the Communication Act applies only to interstate communications.

Section 1 of the Communication Act, 47 U.S.C.A. § 151, declares it to be the purpose of the act to regulate interstate and foreign commerce in communication by wire or radio.

In section 2(a), 47 U.S.C.A. § 152(a), it is provided that the provisions of the act shall apply to all interstate and foreign communication by wire or radio.

By section 605, 47 U.S.C.A. § 605, "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney." (Italics supplied.)

It therefore appears by the very terms of the Communication Act that, with the exception of a call from Boston to Bangor by the appellant Valli to Louis Weinstein, who was indicted as a coconspirator but was found not guilty by direction of the trial judge, it does not apply to the facts in this case, since all the other intercepted telephone messages were intrastate messages and therefore were not subject to the provisions of the Communication Act.

The call by Valli to Weinstein in Bangor does not necessarily appear from the record to have been a part of the conspiracy, especially as Weinstein was found not guilty, but may have been a friendly call by Valli, notifying Weinstein that a truck of his had been seized by federal officials while transporting a large amount of alcohol, and a request by Weinstein for assistance, and an agreement by Valli that he would see what he could do, with a suggestion that Weinstein had better come to Boston himself.

It does not appear that the substantial rights of the complaining parties were prejudiced by the admission of this evidence. Title 28, § 391, U.S.C.A.

The burden of showing that evidence improperly admitted is prejudicial is on the party complaining. Haywood et al. v. United States, 7 Cir., 268 F. 795; Rich v. United States, 8 Cir., 271 F. 566; Hall v. United States, 8 Cir., 277 F. 19; Simpson v. United States, 9 Cir., 289 F. 188, certiorari denied 263 U.S. 707, 44 S.Ct. 35, 68 L.Ed. 517; Armstrong v. United States, 9 Cir., 16 F.2d 62, certiorari denied 273 U.S. 766, 47 S.Ct. 571, 71 L.Ed. 881; Shuman v. United States, 5 Cir., 16 F.2d 457; Nash et al. v. United States, 2 Cir., 54 F.2d 1006. The defendants have failed to sustain this burden, since they have not furnished this court a sufficient record of the entire case from which it can be said that the substantial rights of the defendants were affected by the introduction of this evidence.

The Nardone Case holds that evidence consisting of interstate communications obtained by federal officers by "wire tapping" is inadmissible under the Communication

Act. If the same facts which existed in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376, should come before the Supreme Court since the passage of the Communication Act, the evidence obtained in that case by wire tapping would now be held inadmissible, since it consisted of interstate or foreign communication. But the question still remains whether section 99 of chapter 272 of Mass.Gen.Laws (Ter.Ed.), or ethical grounds, render telephone communications intercepted by federal officers inadmissible in a federal court where the communications intercepted are *intrastate* communications.

In the first place it is questioned whether the evidence in this case, though obtained by federal officers without the written permission of the Attorney General of Massachusetts, or the District Attorney of the district in which it was obtained, was obtained "with the intent to procure information concerning any official matter"—no indictment was pending against these respondents at the time—or with the intent "to injure another" within the meaning of the Massachusetts statute; the evidence being obtained for the purpose of enforcing the law.

In the second place, it appears that evidence obtained in violation of a state statute or a State Constitution does not render such evidence inadmissible in a federal court, unless the rights of a respondent under the Federal Constitution or a federal statute were violated in obtaining it. Wigmore on Evidence, 2d Ed.1923, Vol. IV, §§ 2183, 2184; Adams v. New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575; Commonwealth v. Dana, 2 Metc., Mass., 329; People v. DeFore, 242 N.Y. 13, 150 N.E. 585; United States v. Reid et al., 12 How. 361, 363, 365, 13 L.Ed. 1023; Withaup v. United States, 8 Cir., 127 F. 530, 534; Gindrat v. People, 138 Ill. 103, 27 N.E. 1085.

The exclusion of evidence of federal officers obtained under an illegal warrant, or if they participated in an illegal search with state officers in the enforcement of the federal Prohibition Act, 27 U.S.C.A. § 1 et seq. was based on the fact that the Fourth Amendment was violated. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann. Cas.1915C, 1177; Silverthorne v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426.

However, the declaration of the majority of the court in the Olmstead Case, that the obtaining of evidence by tapping telephone wires does not violate the Fourth Amendment, for reasons therein set forth, still stands as the law of the land until the Supreme Court shall hold to the contrary. The declaration of the majority opinion on that question was not dictum. It was the sole issue raised by the writ of certiorari. This court, of course, cannot reverse it or overrule the fully-considered opinion of the majority, and the Supreme Court in the Nardone Case did not do so. Until the Supreme Court itself shall reverse its decision on this point, this court is governed by it.

The tapping of telephone wires then is not a violation of the Fourth Amendment, nor is the use of evidence thus obtained a violation of the Fifth Amendment. No provision of the Federal Constitution or of the Communication Act is violated by intercepting intrastate communications.

The Eavesdropping Act of Massachusetts does not in terms render evidence obtained by wire tapping inadmissible in the courts of that commonwealth, and we find no decisions of the Supreme Court of Massachusetts which so hold; and if there were, it would not control the federal courts. The rule of the common law as it existed in that commonwealth when the Judiciary Act was adopted in 1789, 1 Stat. 73, prevails in criminal cases in the federal courts; viz., that evidence, though illegally obtained, if relevant and material, is admissible unless Congress has modified it by statute. Greenleaf on Evidence, Vol. 1, 12th Ed., § 254(d); Commonwealth v. Dana, supra; United States v. Reid et al., 12 How. 361, 363, 365, 13 L.Ed. 1023; Funk v. United States, 290 U.S. 371, 373, 380, 54 S.Ct. 212, 215, 78 L.Ed. 369, 93 A.L.R. 1136; Melaragno v. United States, 3 Cir., 88 F.2d 264; Commonwealth v. Wilkins, 243 Mass. 356, 359, 138 N.E. 11; Commonwealth v. Donnelly, 246 Mass. 507, 141 N.E. 500.

In the case of United States v. Reid, supra, 12 How. 361, at page 363, 13 L.Ed. 1023, the court said:

"And the law by which, in the opinion of this court, the admissibility of testimony in criminal cases must be determined, is the law of the State, as it was when the courts of the United States were established by the Judiciary Act of 1789."

And on page 365 of 12 How., 13 L.Ed. 1023:

"And the only known rule upon the subject which can be supposed to have been in the minds of the men who framed these acts of Congress, was that which was then in force in the respective States, and which they were accustomed to see in daily and familiar practice in the State courts."

Again in the case of Funk v. United States, supra, 290 U.S. 371, at pages 378, 379, 54 S.Ct. 212, 214, 78 L.Ed. 369, 93 A.L. R. 1136:

"The court found from what the congressional legislation omitted to say, as well as from what it actually said, that in establishing the federal courts in 1789 some definite rule in respect of the testimony to be taken in criminal cases must have been in the mind of Congress; and the rule which the court thought was in the mind of that body was that of the common law as it existed in the thirteen original states in 1789. The Logan Case in part rejected that view, and held that the controlling rule was that of the common law in force at the time of the admission of the state in which the particular trial was had. Taking the two cases together, it is plain enough that the ultimate doctrine announced is that, in the taking of testimony in criminal cases, the federal courts are bound by the rules of the common law as they existed at a definitely specified time in the respective states, unless Congress has otherwise provided."

The rule applicable in criminal cases was exhaustibly examined by this court in Scaffidi v. United States, 1 Cir., 37 F.2d 203, 207, 208. In that case this court adopted the language of the court in the case of United States v. Reid, supra:

"The rules of evidence in criminal cases, are the rules which were in force in the respective States when the Judiciary Act of 1789 was passed. Congress may certainly change it whenever they think proper, within the limits prescribed by the Constitution. But no law of a State made since 1789 can affect the mode of proceeding or the rules of evidence in criminal cases * * *" (in the federal court).

And further said at page 208 of 37 F.2d:

"And we might add that, so far as we are able to determine by an exhaustive examination, in the more than 60 years following the decision in the Reid Case there has not been a decision of a federal court of last resort squarely holding that in the exercise of its criminal jurisdiction it must be governed by current state statutes. United States v. Hall (D.C.) 53 F. 352; United States v. Hughes (D.C.) 175 F. 238; Maxey v. United States (C.C.A.) 207 F. 327; Denning v. United States (C.C.A.) 247 F. 463; Parker v. United States (C.C. A.) 3 F.2d 903.

"It follows that we cannot adopt the defendant's contention that the admissibility of the testimony offered is to be controlled by the Massachusetts statutes above cited."

In the case of McCoy v. United States, 5 Cir., 247 F. 861, 862, the court also followed the rule laid down in United States v. Reid, supra, and said:

"The courts of the United States uniformly held from the time they were created that the rules of evidence in criminal cases were the rules which were in force in the respective states when the Judiciary Act of 1789 was passed. This proposition was first challenged in the Supreme Court of the United States some 60-odd years after the passage of the Judiciary Act of 1789, and the court adhered to the practice hitherto followed. United States v. Reid, 12 How. 361, 13 L. Ed. 1023."

If the common law of Massachusetts as practiced in 1789 were that evidence, however illegally obtained, was admissible in the courts of that state, the federal courts, where no federal constitutional guaranty is violated, or a federal statute controls, follow the local practice in the receipt of evidence in criminal cases, as it existed in 1789 in the state where the case arises.

The recent decision of the Supreme Court in the Nardone Case, supra, therefore, is not necessarily decisive of this case; and until that court reverses so much of the Olmstead Case as declares that the Fourth Amendment is not violated by the tapping of telephone wires, the rule of the common law as to evidence illegally obtained, as applied in practice in Massachusetts in 1789, governs.

Even if the Massachusetts courts should now hold that information obtained under its Eavesdropping Act was not admissible as evidence in its courts, it does not establish the rules of evidence in the federal courts. Scaffidi v. United States, supra. United States v. Reid, supra. If, however, a majority of the Supreme Court shall hold that the Fourth Amendment was violated by the federal officers in this

case, or that ethical considerations require the rejection of the evidence obtained by federal officers by the tapping of telephone wires and a modification of the common-law rule as to admissibility of evidence illegally obtained, a new trial should be granted to the respondents.

We think there was no error in the admission of the other evidence in the case to which exceptions were taken.

■ The testimony of the witness Buddington, an employee of the New England Telephone & Telegraph Company, and the records which he produced relating to the installing of telephones at certain places where communication was established between these appellants and their coconspirators, and records of telephone calls between places shown to be occupied by or in use by coconspirators, we think was admissible under Jarvis et al. v. United States, 1 Cir., 90 F.2d 243, 245; United States v. Cotter et al., 2 Cir., 60 F.2d 689; Jennings v. United States, 5 Cir., 73 F.2d 470, 473; E. I. Du Pont de Nemours & Co. v. Tomlinson et al., 4 Cir., 296 F. 634; Straus et al. v. Victor Talking Machine Co. et al., 2 Cir., 297 F. 791; North Western Refrigerator Line Co. v. Ervin et al., 5 Cir., 78 F.2d 186.

While formerly at common law such evidence may not have been admissible under the hearsay rule, the law, however, is not static and the impossible is not required in these days of complicated business to meet the rules of evidence adopted when earlier and simpler methods of doing business were customary. With a business like that of the New England Telephone & Telegraph Company requiring many employees, who make records of hundreds of calls daily, if litigants were compelled to summon each employee engaged in making every record requiring proof, it would render the rules of evidence as originally recognized at common law an obstruction to justice instead of a means of promoting it. Funk v. United States, 290 U.S. 371, 381, 382, 54 S.Ct. 212, 215, 78 L.Ed. 369, 93 A.L.R. 1136. We think it was within the sound discretion of the trial court to admit such evidence offered by the witness Buddington, especially since much of the evidence offered by him was corroborated by other testimony in the case.

■ The guest registration cards offered through the assistant manager of the Hotel Manger as to rooms occupied by certain of the conspirators were also properly admitted. They were not only the permanent records of a large business institution, but the signatures were identified by a handwriting expert as those of some of the alleged conspirators; and another so registering, one of the appellants, in fact, was personally known to the assistant manager. Whether the records kept by a hotel telephone operator of "out calls" from the room occupied by the appellant Goldstein were admissible on the same ground as those of the Telephone Company, we think it is unnecessary to determine, since, in view of the other evidence in the case, they were not shown to be prejudicial to the appellant.

■ The evidence of Richter as of his own knowledge of the delivery of yeast and molasses to Fisher, one of the coconspirators, in such quantities as to warrant a jury in finding, with the other evidence in the case, that it was to be used in manufacturing alcohol, was properly admitted. His testimony as to sales and deliveries by employees who were not called as witnesses, and of which he had no personal knowledge, and as to books and slips showing deliveries, which were not produced, we think was improperly admitted. The statute, G. L.Mass. (Ter.Ed.) c. 233, § 78, does not make books of account admissible to prove sale and delivery in criminal proceedings. The federal statute, Title 28, § 695 U.S.C. A., making records of actual transactions made at the time admissible, was passed subsequent to Richter's records of sales and deliveries, and Congress expressly made this section prospective and not retroactive in its application. U.S.C.A., title 28, § 695, 695h.

■ In addition to the admissible testimony of Richter, the testimony of one Rabinovitz, an employee of Richter, who testified that he on six occasions had taken a large quantity of yeast from Richter's place to his own home where the coconspirator Fisher called for it and took it away, was also admissible. The evidence improperly admitted as to books and slips showing deliveries but not produced, and of deliveries by employees not called, was only additional to the admissible testimony of Richter and Rabinovitz in support of the charges in the indictment, and, upon the record in this case, does not under section 391 of title 28 U.S.C.A., constitute ground for reversing the judgment.

The judgment of the District Court is affirmed.

**694**

**MORTON, Circuit Judge (dissenting.)**

It seems to me that the opinion in the Nardone Case, Nardone v. U. S., 58 S.Ct. 275, 82 L.Ed. ——, December 20, 1937, especially when read in connection with the dissent, indicates clearly that on questions of wire tapping the views of the Supreme Court are now in accordance with those expressed in the dissenting opinions in the Olmstead Case, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376. My associates, I understand, feel that, as the Olmstead Case was not explicitly overruled, we are still bound by it. I had not supposed the requirement to be so rigid, especially on matters of this character where the law rests on ethical considerations. The Nardone Case, passing by the constitutional question, holds in substance that conduct which is regarded by the public as so unethical that it is by statute specifically forbidden to persons generally is also forbidden to officers of the law, and that evidence obtained by officers in violation of such statutes will not be admitted in the federal courts. This principle is equally applicable whether the statute involved is federal or state; and I do not think there is occasion to resort to nicety of construction in dealing with such statutes in order to avoid this salutary rule. Official lawlessness seems to me quite as serious as private lawlessness because if it is condoned individuals are left helpless against official abuse—not a negligible danger in view of the rapidly extending powers of federal and state bureaucracies.