**JARVIS et al. v. UNITED STATES.**
No. 3121.

Circuit Court of Appeals, First Circuit.
May 24, 1937.

244

F. J. Carney, of Boston, Mass. (William H. Lewis, James H. Vahey, Charles F. Smith, Daniel A. Lynch, William J. Killion, and Kevin P. Hern, all of Boston, Mass., on the brief), for appellants.

Charles W. Bartlett, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

■ This is an appeal by the defendants from convictions and sentences on two separate indictments. The first charged use of the mails in a scheme to defraud. It contained ten counts each alleging a separate substantive offense, and an eleventh count alleging a conspiracy to commit the same offense. The appellants, Jarvis and Gaines, were convicted on all counts and were sentenced to five years' imprisonment on each of the substantive counts, and to two years' imprisonment on the conspiracy count, the sentences to run concurrently. Other appellants were convicted only on part of the counts, and concurrent sentences were imposed on such counts. The second indictment was for a conspiracy to violate section 17 of the Securities Act of 1933. (15 U.S.C.A. § 77q). The appellants were also convicted under this indictment and each was sentenced to imprisonment for two years, the sentences to run concurrently with those imposed under the first indictment. There are 100 assignments of error, 48 in the first case and 52 in the second. This is clearly an unreasonable number and would justify a dismissal of the appeal. Patterson v. Mobile Gas Co., 271 U.S. 131, 132, 46 S.Ct. 445, 70 L.Ed. 870; Albert Pick-Barth Co. v. Mitchell Woodbury Corporation (C.C. A.) 57 F.(2d) 96, 100. However, as for reasons hereafter stated, we find it unnecessary to consider the assignments of error in the second case, and, as substantial sentences are involved, we think a dismissal of the appeal on this ground would be too drastic.

■ As to the first indictment: About a dozen errors are assigned on matters of pleading, viz., overruling demurrers and motions to quash, denying specifications or particulars, refusing to hold the indictments were bad for variance and duplicity, and refusing motions for election on the ground that the government's evidence showed two conspiracies. Since the act of 1919 (Jud. Code § 269, as amended, 28 U.S.C.A. § 391) requiring that on any appeal the court shall give judgment without regard to technical errors which do not affect the substantial rights of the parties, it is only under exceptional circumstances that rulings of this character will give rise to reversible error. See Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. We think the demurrers and motions to quash were properly overruled, and that the indictments were formally sufficient. It was within the discretion of the District Judge whether to grant the motions for specifications. It does not appear that in refusing them he abused his discretionary power. The other motions going to the pleadings were, we think, properly dealt with.

■ The trial judge under objection and exception by the defendants ordered that the two indictments should be tried together. This order was made after the government had nol prossed against three defendants in the first indictment who were not defendants in the second indictment, thereby making the defendants in each indictment the same persons. To a very large extent the facts involved in each indictment were the same. There was clearly no abuse of discretion in directing that the two be tried together. Such orders are explicitly authorized by R.S. § 921 (28 U.S.C.A. § 734). See Brown v. United States, 143 F. 60 (C.C.A.8); Morris v. United States, 12 F.(2d) 727 (C.C.A.9).

■ The defendants complain that the government was not directed to state in regard to each piece of evidence which was presented, on which indictment it was offered. When separate cases are tried together it is because of great similarity in the evidence applicable to them. The trial judge followed the customary method of admitting

any evidence which bore on either indictment, leaving to the defendants to ask to have any particular piece of evidence limited if they thought it should be. There was no error in so doing. Kansas City Ry. Co. v. Jones, Adm'x, 241 U.S. 181, 36 S.Ct. 513, 60 L.Ed. 943; Farnsworth v. Nevada Co., 102 F. 578 (C.C.A.8).

Many exceptions were taken on questions of evidence. None of these is of basic character. The most doubtful was the admissibility of certain telephone conversations. In a typical instance, the witness said that he had been receiving, for some little time before this talk, daily and weekly market letters from Gibbs & Co., and a day or two before, a special letter; that he received one morning a telephone call from Springfield; that the speaker said he was A. E. Gibbs and asked if he had received their literature, letters, etc.; that he then went on to talk about the Polymet stock, urging him to buy it, saying that the company was shortly to be taken over by the Westinghouse Company and its stock would greatly enhance in value, etc. The witness did not recognize the voice, but said he afterwards received other calls of the same sort. So far as appeared no other person or concern was at that time selling Polymet stock.

■■ The law is now well settled with respect to telephone calls, that, if the person testifying does not recognize the voice, the surrounding circumstances may show sufficient probability that the person talking at the other end was one whose statements would be admissible to warrant admitting the conversation. Andrews v. United States, 78 F.(2d) 274, 105 A.L.R. 322 (C.C. A.10); American & British Corporation v. New Idria Co. (C.C.A.) 293 F. 509; General Hospital Soc. v. New Haven Rendering Co., 79 Conn. 581, 65 A. 1065, 118 Am. St.Rep. 173, 9 Ann.Cas. 168; Van Riper v. United States, 13 F.(2d) 961, 968 (C.C.A. 2). The circumstances surrounding the incident made it altogether probable that the person talking to the witness over the telephone was connected with Gibbs & Co. as he said he was, and justified the admission of the testimony. The same is true mutatis mutandis as to the other telephone conversations.

Without undertaking to discuss in detail the testimony of the witnesses Caroll, Newton, Flackman, and Badger to which exception was taken, we are of opinion that there was nothing in the rulings of the trial judge in this connection which amounted to reversible error. The telephone records would not have been admissible at common law on the proof offered. But the common law rule has of necessity been modified in recent years. United States v. Cotter, 60 F.(2d) 689" (C.C.A.2); E. I. Du Pont, etc., Co. v. Tomlinson, 296 F. 634 (C.C.A.4); North Western Refrigerator Line Co. v. Ervin, 78 F.(2d) 186 (C.C.A.5); Jennings v. United States, 73 F.(2d) 470 (C. C.A.5).

At the close of the evidence the defendants moved for directed verdicts on the conspiracy count on the ground that the government's evidence showed, not a single conspiracy as alleged, but two successive independent conspiracies; they also moved that the government be required to elect on which of the two alleged conspiracies it would go to the jury on this count. These motions were denied. The defendants also moved that the government be required to elect between counts 1 to 4, inclusive, which relate to dealings at Financial Profits in Boston in June and July, 1933, and counts 5 to 10 inclusive, which relate to dealings at A. E. Gibbs & Co., in Springfield, in August and September, 1934. The motion was denied. The questions involved in these motions may conveniently be considered together.

The indictment alleged the use of the mails in a scheme to defraud which was formed about October 1, 1932, and lasted up to the date of the indictment. It charged that the scheme was that the defendants would operate through Financial Profits with an office in Boston and through A. E. Gibbs & Co. with an office in Springfield. It described the method of operation at each place. The first four counts refer to alleged victims of Financial Profits, the next six refer to alleged victims of A. E. Gibbs & Co.; the last count, as has been said, charges a general conspiracy to use the mails in a scheme to defraud, with overt acts at Financial Profits and at A. E. Gibbs & Co. The operations at Financial Profits in Boston terminated in July, 1933. The operations at Gibbs & Co. began in June or July, 1934, and terminated about October 1, 1934. The evidence showed that Jarvis and Gaines were active throughout at both places. Shuman worked at Gibbs & Co., but not at Financial Profits. Gibbs had nothing to do with Financial Profits, and others of the defendants had nothing to do

with Gibbs & Co. A considerable interval elapsed between the cessation of business at Financial Profits and the beginning of business at Gibbs & Co.

It was the contention of the appealing defendants that the government had shown, not a single conspiracy, but two distinct conspiracies separated in place and in time. This was a question of fact on the evidence. According to the government's evidence Jarvis and Gaines were the prime movers and the principal beneficiaries of the scheme and conspiracy. They set up Financial Profits as an office from which to make fraudulent sales of stock in which they were interested. They operated it with the aid of salesmen and assistants, some of whom were indicted with them. When they regarded it as inadvisable to continue at Financial Profits they closed it and some months later arranged with Gibbs & Co. to take over the latter's business at Springfield and to use it in the same way as an agency through which to sell the same stock. At Springfield they had as assistants some of the persons who had been employed by them in Boston and others who had had no previous connection with them. Throughout practically the entire period Jarvis and Gaines had an office in Boston from which they directed operations at both places. The same stock, called "Poly C," was sold at both places. That their operations were grossly fraudulent the government's evidence, if accepted, leaves no doubt.

■ The government's theory of the case was that Jarvis and Gaines were parties to a continuing conspiracy to swindle the public by fraudulent sales of stock; that various other persons became for a time members of this conspiracy. The "scheme to defraud" described in the substantive counts is alleged to have included illegal use of the mails at both Boston and Springfield. The jury under the instructions of the presiding judge discriminated between defendants. They acquitted Waldo and Shuman (who worked at Springfield) on the counts relating to Financial Profits and convicted them on the counts relating to Gibbs & Co. and to the general conspiracy. There was evidence of a close connection throughout between Jarvis and Gaines in a fraudulent enterprise. It cannot be said that it did not warrant the view which the jury took that it constituted a continuing scheme and a continuing conspiracy as charged in the indictment. The motions under discussion were rightly denied. See United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168; Scaffidi v. United States, 37 F.(2d) 203 (C.C.A.1); Van Riper v. United States, 13 F.(2d) 961 (C.C.A.2).

■ The appellants moved that the government be required to elect whether it would proceed on the first indictment or the second. The District Judge refused to order it to do so. In this he was clearly right. The two cases were not consolidated, they were being tried together and the crimes charged were substantially different.

■ We have examined those parts of the District Attorney's argument to which the appellants took exception. In long and complicated trials it is not uncommon for counsel arguing to the jury to make unintentional misstatements of fact. When this occurs it is the duty of opposing counsel to call attention to the misstatement and request the court to instruct the jury to disregard it. No exception lies merely to the remarks of counsel. Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799; Diggs v. United States, 220 F. 545 (C.C.A. 9); United States v. Wexler, 79 F.(2d) 526, 529 (C.C.A.2). In the present case no request was made for instruction by the court that the jury disregard the improper argument.

■ An exception was taken on the ground that the instructions as to good faith were inadequate. The trial judge plainly told the jury that good faith on the part of the defendants in making the representations, honest belief that they were true, a belief which has some substantial basis, would be a legal excuse. We think the jury could not have been in doubt as to the correct rule of law on this point. The other assignments of error in this case have been examined. None of them seems to us to be well founded nor to require discussion. We conclude that there was no reversible error in the trial of the first indictment.

■ We find it unnecessary to consider the questions raised under the second indictment. The sentences imposed under that indictment did not exceed those imposed under the first indictment and are to run concurrently with them. Even if the convictions on the second indictment should be reversed, the defendants' punishment would be in no way affected. It is well established that, where a conviction is sustained on counts sufficient to support the sentence,

it will not be disturbed for error on certain other counts. Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 273, 73 L.Ed. 692; Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966; Hill v. United States (C.C.A.) 42 F.(2d) 812. The affirmance of the convictions under the first indictment makes the correctness of the convictions under the second indictment merely a moot question. The appeal on the second indictment will accordingly be dismissed. And on the first indictment the judgments are affirmed.

The appeals on the second indictment are dismissed, and the judgments on the first indictment are affirmed.