**TANCHUCK et al. v. UNITED STATES.**

No. 1515.

Circuit Court of Appeals, Tenth Circuit.
Dec. 14, 1937.

Edgar C. Jensen, of Salt Lake City, Utah (Richard O. Pearce, of Salt Lake City, Utah, on the brief), for appellants.

Scott M. Matheson, Asst. U. S. Atty., of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and John S. Boyden, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON and WILLIAMS, Circuit Judges, and SYMES, District Judge.

BRATTON, Circuit Judge.

Emmanuel Tanchuck, Marshall Mark Dawson, and Harry Barnett Tanchuck were indicted jointly in seventeen counts charged with receiving, concealing, and aiding in the concealment of army blankets which had been embezzled from the United States, well knowing that they had been embezzled and with the intention on the part of the accused to convert them to their own use and benefit in violation of section 48 of the Criminal Code. 18 U.S. C.A. 101. Each count charged that on a named date a specified number of blankets had been thus received and concealed; and the several counts in the aggregate charg-ed that between March 10, 1936, and September 16, 1936, 5,243 blankets had been so received and concealed. Emmanuel Tanchuck was found guilty on the first, second, fourth, seventh, and eighth counts; Marshall Mark Dawson and Harry B. Tanchuck were found guilty on the seventh, eighth, tenth, sixteenth, and seventeenth counts; and other disposition was made of the remaining counts.

William G. Hines testified that he was a captain in the United States Army and property custodian of the Fort Douglas district of the Civilian Conservation Corps; that as such custodian he had charge of all property furnished to the forty-six camps within the Fort Douglas district; that an inventory made .on February 27, 1936, disclosed a shortage of 3,671 blankets; that a subsequent inventory made on September 26th revealed an additional shortage of 220 blankets; that such shortages were traced directly to the salvage warehouse at Fort Douglas; and that Amos Woodruff was foreman of the sal-,vage and renovation warehouse and in charge of all property there. Woodruff testified that he had been in the military service; that he had been corporal, sergeant, supply sergeant, and mess sergeant in the infantry; that he was honorably discharged in April, 1935, but continued in the district quartermaster's office at Fort Douglas and remained there until October, 1936; and that he had charge of the renovation and salvage of large quantities of army blankets from time to time which were used to make distribution to the several camps of the Civilian Conservation Corps in the Fort Douglas district composed of the states of Arizona, Nevada, and Utah. He then detailed the manner in which he and one of the appellants entered into an illicit understanding pursuant to which the first sale and delivery of blankets was made, the manner in which subsequent sales were made, the places at which deliveries were made, and the manner in which the several appellants participated. He testified that the first delivery was made at the warehouse at the Fort; that some deliveries were made in a Civilian Conservation Corps truck at the junk yard operated by one of the appellants; that some were made from a like truck at the laundry which laundered large quantities of blankets for the government under contract; that some were made by the laundry on its premises at the di-

rection of Woodruff after they had been laundered; that the prices ranged from 40 cents to 50 cents per blanket; that all payments were made to him in currency; and that he had been indicted for such embezzlements and had entered a plea of guilty, but had not been sentenced. There was no other testimony concerning the ownership and embezzlement of the blankets. Appellants admitted in the course of their testimony the purchase of blankets from Woodruff. Emmanuel Tanchuck testified that he was part owner of a junk yard in Salt Lake City; that he had purchased property at the Fort and knew Woodruff; that Woodruff came to his junk yard and stated that it was necessary to sell some of the merchandise at the Fort in order to make room for incoming supplies for Indians, that they did not have time to secure bids, and that he was authorized to secure individual prices from different persons; that all of the purchases which he made were made pursuant to that representation; and that he believed Woodruff was authorized to make the sales. Dawson testified that he was at the junk yard when Woodruff came and had a conversation with Emmanuel Tanchuck; that he later received some blankets and made sale of them under the direction of Tanchuck; that he then talked with Woodruff at the Fort and sought to purchase blankets direct, offering to pay more than Tanchuck had been paying; that pursuant to that conversation he did make purchases; that he believed Woodruff was authorized to make the sales; that Harry Tanchuck was his partner and shared in the profits; and that he told Harry the name of the person from whom he was making the purchases. Harry Tanchuck testified that he and Dawson were partners in buying and selling junk; that they went to Woodruff's residence on one occasion and he heard Dawson offer to pay Woodruff 50 cents for blankets; that Woodruff came to his residence once looking for Dawson; that he and Dawson received blankets; that he helped to handle them and made sale of them; and that he had been to the Fort twice, but did not know that Woodruff worked for the government.

The contention urged for reversal is that in instructing the jury the court failed and refused to submit the issue of fact whether the blankets had actually been embezzled; but, instead, limited the jury to a determination of whether in ac-quiring the blankets appellants knew that they had been embezzled. Certain parts of the instructions, together with a statement made by the court to counsel at the conclusion of the giving of the instructions and in the course of the taking of exceptions thereto, are grouped in the specification of error to sustain the contention. It must be alleged in an indictment charging an offense under the statute that the property had been embezzled, and there must be evidence to support the allegation. Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890; Naftzger v. United States, 8 Cir., 200 F. 494; Wild v. United States, 8 Cir., 291 F. 334. But this indictment contained the requisite allegation. There was direct evidence of the embezzlement, thus supporting the charge; and there was no other evidence respecting that question.

The controversy at the trial was whether in acquiring the blankets appellants knew that they had been embezzled. The contest was waged around that point; and so, most of the instructions were addressed to that issue. But all parts of the instructions must be considered together. Excerpts cannot be lifted and considered separate and apart from the whole. Considered in that manner it is apparent that the question of embezzlement was not submitted separately and distinctly from that of acquisition with knowledge of embezzlement, either in separate paragraphs or position in the context. Instead the two were interwoven and intertwined, but both were submitted as elements of the crime which required proof. The court, in the very beginning of the instructions and once later, quoted the pertinent part of the statute. The jury could not have failed to understand from the whole instructions that in order to convict they must find that the property had been embezzled, and that appellants had knowledge of that fact at the time they acquired it. The court did say at one point that except as to the first count there was no dispute as to the transactions, and at another that there was no question in the testimony concerning the embezzlement; but those statements were mere comments concerning the absence of conflict in the evidence relating to that issue, and they were accurate in substance. They did not take the ultimate issue from the jury.

After the instructions had been completed, and in the course of discussion with

counsel for appellants concerning an exception to them, the court stated that embezzlement was not a question for the jury to decide because it appeared from all the testimony that the blankets were unquestionably embezzled. That observation was made immediately after the court had asked counsel whether in respect to an exception just taken he desired to make the point that maybe Woodruff had the right to sell the blankets, to which counsel replied, "No, I don't; I think the burden is on the government to show beyond a reasonable doubt that these blankets were actually embezzled." The statement was not a part of the instructions. It was a comment addressed to counsel and it must have been intended to express the opinion of the court respecting the lack of conflict in the evidence concerning that element in the case.

It may be conceded that the comment was not a correct pronouncement of the controlling principle of law. Still the case is not a close one. The proof of guilt is overwhelming, and a painstaking examination of the entire record fails to disclose any error which prejudiced the rights of appellants. Section 269 of the Judicial Code, as amended, 28 U.S.C.A. § 391, contains an admonition that a conviction should not be disturbed on appeal where substantial prejudice does not appear. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Tingley v. United States, 10 Cir., 34 F.2d 1. The principle enunciated in the statute has appropriate application here.

The judgment is affirmed.