**MORGAN et al. v. UNITED STATES.**
No. 11125.

Circuit Court of Appeals, Eighth Circuit.
Aug. 9, 1938.

Rehearing Denied Sept. 6, 1938.

474

L. E. Gwinn, of Memphis, Tenn., and Edward H. Coulter, of El Dorado, Ark. (Kelly Brown, of Muskogee, Okl., on the brief), for appellants.

Leon B. Catlett, Asst. U. S. Atty., of Little Rock, Ark. (Fred A. Isgrig, U. S. Atty., of Little Rock, Ark., on the brief), for the United States.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

January 8, 1932, the Cherokee Public Service Company, a Delaware corporation, and the Municipal Gas Company, an Oklahoma corporation, were both adjudged bankrupt in the district court of the United States for the Eastern District of Arkansas. The causes were referred to J. H. Schneider, referee. On the same day W. D. Dickinson was appointed receiver, and, on February 18, 1932, was elected trustee for both companies. The Cherokee Company was organized to gather gas for wholesale distribution in the City of Muskogee, Oklahoma, and the Municipal Gas Company was organized for the purpose of retailing gas in that city, depending primarily upon the Cherokee Company for its supply of gas. The jurisdiction in bankruptcy is not challenged. Prior to bankruptcy both appellants, who are brothers, were intimately connected with the control, management, and ownership of both companies. After bankruptcy trustee Dickinson employed Monroe B. Morgan as general manager to assist in the operation of the companies.

On or about August 15, 1935, M. B. Morgan advised the trustee that it was necessary to obtain an additional supply of gas to meet distribution requirements. Accordingly, by letter and wire, M. B. Morgan and S. R. Morgan took the matter up with representatives of the Pure Oil Company, an Ohio corporation, at Muskogee, Oklahoma, and Chicago, Illinois, with the object of entering into a contract with that company for the purchase of the gas desired. The intermediate steps taken in the negotiations leading to the final consummation of the contracts, which, in large measure, evidence the scheme upon which this prosecution is founded, are too numerous and involved to warrant extended recital in this opinion. It will be sufficient for our purposes that the Pure Oil Company agreed to furnish the required gas to the trustee to the maximum amount of 15,000,000 cubic feet per month at the rate of eight cents per thousand cubic

feet delivered; that it (the seller) would at its own expense construct a six inch pipe line from the refinery of the seller to the receiving line of the buyer. There was in this offer no requirement for a minimum amount of gas which the trustee would be required to take. Thereupon, the Morgans organized a so-called corporation under the name "Oklahoma Petroleum Products Company", advising the Pure Oil Company that it had become necessary to change the name of the nominee thus.

The contract between the Pure Oil Company and the Oklahoma Petroleum Products Company was substantially as above stated. The contract between the latter company (owned by the Morgans) and Dickinson, trustee, provided for gas to be supplied at fifteen cents per thousand cubic feet, at a minimum per month amounting to $2,250. This contract also required a $2,000 cash deposit, and the payment by the trustee of $2,500 for making the pipe line connection, which the Pure Oil Company had agreed to make at its own expense. To the trustee M. B. Morgan explained that Oklahoma Petroleum Products Company was the trade name of the Pure Oil Company in Muskogee, Oklahoma. The difference in the price per thousand cubic feet was explained to him by the representation that the B. T. U.'s in this gas would have to be blended with air which would increase the volume of the gas, and thereby reduce the cost down to about eight cents, as the trustee had been led to understand.

The government charged that by these methods the bankrupt estates had suffered a loss of $10,000 procured from the trustee by defendants through deception and fraud. The indictment is in seven counts based upon fraudulent use of the mails in furtherance of a scheme and artifice to defraud. The verdict of the jury found the defendants guilty upon the second, fourth, fifth, sixth and seventh counts, and not guilty upon the first and third counts. The sentences as to each defendant were ordered to run consecutively.

The brief of appellants is of excessive length and its arrangement, likewise, fails to accord with the provisions of our rules. There are forty-two errors assigned, and these are grouped under three headings: "Assignments of Error"; "Brief of Authorities"; and "Argument"; each divided into eighteen identical subjects lettered A to R, inclusive. This led to confusion of repetition and over-lapping of discussion, thereby casting additional burden upon consideration of the case.

Under letter A of all three groups the sufficiency of the indictment is challenged. That instrument is long and scrupulously explicit in detailing the scheme to defraud and the methods by which appellants are charged with diverting and converting the funds of the bankrupt estates. The letters pleaded are all effective in furtherance of the fraud charged. Incidentally it may be noted that, in a prosecution for devising a scheme to defraud, the matter mailed must, of course, have some relation to, and must be a step in, attempted execution of the scheme, but this need not necessarily appear on its face. Barnes v. United States, 8 Cir., 25 F.2d 61. And letters not mentioned in the indictment, but of similar character, are admissible as bearing upon the character of the scheme and its participants. Davis v. United States, 8 Cir., 9 F.2d 826. The letters introduced between the various parties concerned shed light upon the entire transaction. No error was committed in their admission, and certainly no prejudice is shown to have resulted therefrom. The use of the mails charged in the indictment is not challenged in the errors assigned. Such may be proved by circumstantial evidence and, we think, was so proved in the instant case. Cochran v. United States, 8 Cir., 41 F.2d 193; Corbett v. United States, 8 Cir., 89 F.2d 124, 127. The motion in arrest of judgment is based in terms upon the alleged failure of the indictment to charge an offense, and was properly overruled.

Error is assigned to the action of the trial court in denying petitions for continuance, and for severance and a separate trial of M. B. Morgan. We find from the record no abuse of discretion in denying these petitions. The two Morgan brothers were so closely associated in the transactions involving the offense charged, that the application for severance was entirely without warrant.

Objection is made to the introduction of the written memorandum contract prepared by Augustus, the Chicago representative of the Pure Oil Company, in conformity with the original understanding that that company was to contract directly with trustee Dickinson. This was the contract in substantial terms between the Pure Oil Company and Oklahoma Petroleum Products

Company, and is evidence of the charges made in furtherance of the scheme to defraud charged. It was properly admitted.

Appellants made three applications for subpoenas duces tecum to compel the production of certain checks drawn by appellant Monroe B. Morgan, which checks bore the endorsement of trustee Dickinson. The stated object was to lay the foundation for impeachment of Dickinson on the ground that he had exacted from M. B. Morgan one-half the latter's salary as assistant to the referee. These applications were denied upon the ground that they constituted an attempt to impeach Dickinson upon a matter collateral and irrelevant to any issue in the case on trial. Irrespective of any possible merit of the applications, it appears from the record that Dickinson testified to having cashed a number of checks for M. B. Morgan, whose credit at banks was impaired; but denied that Morgan had ever "given him a cent in his whole life". The issue was therefore before the jury and the presence of the checks would have added nothing substantial to the charge.

Appellants charge error in the refusal of the court to permit them to show a common custom in organizing and operating corporations in Oklahoma and other states. The Oklahoma Petroleum Products Company was organized purely as a Morgan corporation, and the informality of the method employed was stressed by the government at the trial. The irregularities and informalities employed were at least pertinent, but were not the important features of the organization of this corporation. The Oklahoma Petroleum Products Company, as clearly appears from the record, was organized for the sole purpose of providing an entity through which the funds of the bankrupt estate might be diverted to the appellants through the scheme and artifice charged. For this reason no substantial prejudice resulted from this action of the trial court.

Appellants have excepted to the refusal of the court to give eight requested instructions. To the general charge of the court no exception was taken or preserved. A careful consideration of the court's charge convinces that the entire subject matter, including that contained in the instructions requested, was properly and sufficiently submitted. Appellants contend that the verdicts of guilty on counts 2, 4, 5, 6, and 7, are inconsistent and repugnant to the verdicts of not guilty on counts 1 and 3, and, therefore, fatal to judgments of conviction. It is conceded that the rule invoked "is subject to the limitation that there must be evidence in support of the counts on which convictions were had aside from that introduced in support of the counts on which verdicts of not guilty were returned". There is here neither an absence of evidence in support of the counts upon which conviction resulted, nor an identity with the evidence produced in the counts upon which verdicts of not guilty were returned. Of course the nature of the scheme to defraud was the same in each count; but the use of the mails, the letters charged, differed. In such case we are not permitted to speculate upon the reasons which actuated the jury in the conclusions reached. Consistency in a verdict is not essential. But here there is no necessary inconsistency. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Borum v. United States, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513; Bedell v. United States, 8 Cir., 78 F.2d 358.

The assignment of error which requires more serious consideration is number "XXXIX" discussed under letter "P" in appellants' brief. The district attorney on cross-examination interrogated appellant Samuel Ross Morgan as to other charges, and the following colloquy resulted:

"Q. Mr. Morgan, how many times have you been tried for a felony?

"Mr. Robinson: I object.

"Mr. Isgrig: How many times have you been convicted of a felony? A. Not ever.

"Q. And you say the answer to that is not ever? A. Yes, sir.

"Q. Not ever? A. No, sir.

"Q. You were not convicted of the felony of embezzling $37,000.00 from a bank in Perry County, Arkansas? A. I absolutely was not.

"Q. Were you not convicted of embezzling $37,000.00 from an ice company in Jefferson County, Arkansas? A. I was not.

"Q. Were you not convicted in Batesville of a felony? A. I have never been in Batesville.

"Q. You were not convicted of the crime of contempt of court in this court? A. I was not, that is, not a felony, Judge Ragon specifically instructed in this court that I was convicted of a misdemeanor and that is now on appeal to the Circuit Court of Appeals and that is now what we are trying again while that is still on appeal."

Error is likewise assigned to a similar question addressed to the defense witness Coulter, but the question was promptly withdrawn upon objection, and no exception was preserved to the offer.

It cannot be disputed that some of the questions above quoted were, on their face, improper; and no attempt on the part of the government appears to have been made to justify those inquiring as to convictions of felonies. This and other courts have frequently voiced disapproval of this type of cross-examination, and in some cases reversals have resulted. The controlling consideration in this respect is whether, upon the entire record, the court is convinced that the judgment is wrong.

"If the judgment is right, the end of the law has been attained, and it ought not to be disturbed." Furlong v. United States, 8 Cir., 10 F.2d 492, 495; Stunz v. United States, 8 Cir., 27 F.2d 575; Williams v. United States, 8 Cir., 265 F. 625.

Of course, as to the facts, the inquirer is bound by the answers of the witness unless he is prepared to controvert them. And "admission of testimony in rebuttal which should have been offered in the main case is discretionary and not ground for reversal." Miller v. United States, 8 Cir., 21 F.2d 32.

Under the law, as now declared, "the former practice of holding an error reversible unless the opposite party can affirmatively demonstrate it was harmless is changed, and the burden now is on the complaining party to show from the record as a whole the denial of some substantial right". Rich v. United States, 8 Cir., 271 F. 566; Hall v. United States, 8 Cir., 277 F. 19, 23; Trope v. United States, 8 Cir., 276 F. 348; Salerno v. United States, 8 Cir., 61 F.2d 419, 424; Par. 391 (28 U.S.C.A.), amending par. 269, Judicial Code.

It should be remembered that the indictment charges a scheme not only to defraud the said W. D. Dickinson in his representative capacity as trustee, but also "various other persons having a pecuniary interest in said bankrupt estates". These are the real parties suffering ultimate loss, and the charge was overwhelmingly established from undeniable acts of the defendants, acting in concert, apart from the incidents of trial of which appellants complain. The Morgans organized an intermediate corporation which had for its existence no purpose except to enable appellants to divert the funds of the bankrupt estates into their own pockets. It appears from the record that only about $42 worth of gas was delivered by the Pure Oil Company during the life of the contract, and that purely for experimental purposes. No minimum amount to be received by the trustee was exacted by the Pure Oil Company, nor was the credit and authority of the trustee questioned; but, under the terms of the fraudulent Oklahoma Petroleum Products Company contract, the trustee was made to pay $1,000 for gas alleged to have been purchased in January, 1936; $2,250 for gas alleged to have been purchased in February, 1936; $2,250 for gas alleged to have been purchased in March, 1936; $2,000 deposited as a guaranty for the payment of gas purchased as per (fraudulent) contract; and $2,500 to cover the gas connection with the Oklahoma Petroleum Products Company (allegedly a subsidiary of the Pure Oil Company), a connection which the Pure Oil Company had agreed to make at its own expense. All these sums, aggregating $10,000, from the funds of the bankrupt estates, found their way, directly or indirectly, into the pockets of appellants. It may be that the district attorney was unduly zealous in this prosecution, and overstepped propriety in some of his questioning. Of this we expressly do not approve, but the guilt of appellants was otherwise directly and positively proved.

In Apt v. United States, 8 Cir., 13 F.2d 126, Judge Johnson, speaking for this court, said (page 127):

"The connection of the defendant Apt with the conspiracy charged in the indictment was so clearly shown, and the verdict of the jury such a righteous one, that it would be a miscarriage of justice to reverse it on account of this indefensible cross-examination."

Counsel for appellants charge misconduct of the trial judge, as showing bias in rulings and charge. This situation is pretty well met by the Supreme Court, speaking through Mr. Justice Holmes, in Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185, to-wit:

"In a criminal case, when undisputed facts, including the testimony of the defendant, clearly establish the offense charged, the judge may say so to the jury, tell them that there is no issue of fact for their determination and instruct them that, while they cannot be constrained to return a verdict of guilty, it is their duty to do so under their obligation as jurors.

478

"Held, that if the defendant suffered any wrong from the manner in which such instructions were given in the present case, it was purely formal, since there could be no doubt of his guilt on the facts admitted; and the error, if any, was cured by § 269, Jud.Code, as amended February 26, 1919."

We find nothing to justify the charge of misconduct on the part of the trial judge. We have given full consideration to all the errors assigned and urged and find, on the whole record, no ground for reversal.

The judgment is affirmed.