**UNITED STATES v. PARKER et al.**
No. 6500.

Circuit Court of Appeals, Third Circuit.
April 11, 1939.

858

James Mercer Davis, of Camden, N. J., and Harry Green and George S. Silzer, both of Newark, N. J., for appellants.

John J. Quinn, U. S. Atty., of Trenton, N. J., and Hubert J. Harrington, Asst. U. S. Atty., for the United States.

Before BIGGS, MARIS, and BUF-FINGTON, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by Ellis H. Parker and Ellis H. Parker, Jr., from judgments of conviction entered in the District Court for the District of New Jersey upon verdicts of guilty after a trial of a criminal prosecution.

The appellants were indicted together with Murray Bleefield, Harry Weiss and Martin Schlossman for having conspired to kidnap one Paul H. Wendel and transport him in interstate commerce. The indictment alleged that the conspiracy was entered into in Burlington County, New Jersey, and that its purpose was to kidnap Wendel in the Borough of Manhattan, City and State of New York, and unlawfully carry and hold him for ransom, reward and otherwise in the Borough of Brooklyn, City and State of New York, and in the County of Burlington, New Jersey, and while so holding him to unlawfully and knowingly transport him from the Borough of Brooklyn into the State of New Jersey. It was further averred that the purpose of the defendants was to induce Wendel to confess to the kidnapping of Charles A. Lindbergh, Jr., and to submit the confession so obtained to the New Jersey Court of Pardons in connection with the application then pending before it of Bruno Richard Hauptmann who had previously been convicted of the murder of the Lindbergh child.

483 assignments of error have been filed covering substantially every phase of the trial and of the proceedings preliminary thereto. It would be impracticable to discuss each of these individually. Fortunately they resolve themselves according to subject matter into a comparatively small number of groups. We will accordingly proceed to consider separately the question involved in each group.

The appellants first filed a plea in abatement which was overruled by the court below. The plea was based upon three grounds, the first being that the grand jury which found the indictment was not properly drawn. It is unnecessary to consider this point, however, since it was not averred that the appellants were prejudiced by the alleged irregularities in drawing the grand jury. The plea, insofar as it was based on this ground, was, therefore, properly denied. Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; Brookman v. United States, 8 Cir., 8 F.2d 803.

The second reason put forth in support of the abatement plea was that the term of the grand jury had expired before the indictment was found. The grand jury was drawn for the April Term, 1936. The indictment was filed on October 19, 1936 in the succeeding September Term. Sec-

860

tion 284 of the Judicial Code, 28 U.S.C. § 421, 28 U.S.C.A. § 421, empowers the district judge by order to authorize any grand jury to continue to sit during the term succeeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury. Judge Clark in the court below on August 17, 1936, which was within the April Term, entered an order directing the grand jury to remain in service until the further order of the court. The vote upon the indictment here involved had been taken by the grand jury on August 7th, although the bill was not brought into court until October 19th. In the light of the statute and of the court's order its action in thus completing its business in the succeeding term was entirely lawful. Elwell v. United States, 7 Cir., 275 F. 775.

■ Finally the appellants urged in support of their plea in abatement that there was no proper indictment in the case because of the failure of the foreman of the grand jury to keep a record of the number of grand jurors concurring in the finding of the indictment and to file it with the clerk of the court when the indictment was returned, as required by Section 2 of the Act of April 30, 1934, 18 U.S.C. § 554a, 18 U.S.C.A. § 554a. This act, however, relates only to pleas to abate or motions to quash an indictment on the ground that one or more unqualified persons served upon the grand jury which found it. Consequently the failure of the foreman to comply with its provisions becomes material only if a plea in abatement is filed upon that ground. No such plea was made in this case. In its absence we think that the failure of the foreman of the grand jury to keep and file the record required by the statute should not invalidate an indictment otherwise entirely valid. It follows that the plea in abatement was properly overruled.

■ The appellants next demurred to the indictment. Their demurrer was overruled by the court below in an able and comprehensive opinion. 19 F.Supp. 450. The indictment charged a violation of Section 3 of the Federal Kidnapping Act, as amended, 18 U.S.C. § 408c, 18 U.S.C.A. § 408c. The pertinent provisions of the act are as follows:

"§ 408a. Whoever shall knowingly transport or cause to be transported, or aid or abet in transporting, in interstate or foreign commerce, any person who shall have been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away by any means whatsoever and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall, upon conviction, be punished (1) by death if the verdict of the jury shall so recommend, provided that the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnaped person has been liberated unharmed, or (2) if the death penalty shall not apply nor be imposed the convicted person shall be punished by imprisonment in the penitentiary for such term of years as the court in its discretion shall determine: Provided, That the failure to release such person within seven days after he shall have been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away shall create a presumption that such person has been transported in interstate or foreign commerce, but such presumption shall not be conclusive."

"§ 408c. If two or more persons enter into an agreement, confederation, or conspiracy to violate the provisions of sections 408a and 408b of this title, and do any overt act toward carrying out such unlawful agreement, confederation, or conspiracy, such person or persons shall be punished in like manner as provided for by said sections."

The appellants urge that their demurrer should have been sustained since the indictment fails to allege facts sufficient to show that they entered into a conspiracy and fails to set out the purpose of the alleged conspiracy. An examination of the indictment satisfies us that its averments were sufficient in these respects. The defendants further urge that it does not appear from the indictment that Wendel was held for "ransom, reward or otherwise." It is true that there was no averment of holding for ransom or pecuniary reward. It was, however, alleged that through the confession to be obtained from Wendel the appellants planned to publish the purported true story of the kidnapping and death of the Lindbergh child and thereby enhance the reputation of Ellis H. Parker as a successful and competent detective, whereby his services would come to be in great demand. We think that this was sufficient. The statute prohibits the interstate transportation of persons kidnapped for other reasons than ransom or reward.

It is not restricted to cases involving pecuniary benefit to the kidnappers. Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522. We think that Congress by the phrase "or otherwise" intended to include any object of a kidnapping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it.

■ The appellants further urge that the overt acts alleged in the indictment were insufficient to sustain it. The sixth overt act alleged was that on or about February 24, 1936 Bleefield and Weiss did knowingly and unlawfully carry and convey Wendel by motor car operated by them in interstate commerce from the Borough of Brooklyn in the City and State of New York to Mt. Holly in the County of Burlington, New Jersey, and there deliver him into the custody of Ellis H. Parker. This was clearly a sufficient averment of an overt act and it sustains the indictment. We think that the other acts averred were likewise sufficient.

■ The appellants next moved under Section 40 of the Judicial Code, 28 U.S.C. § 101, 28 U.S.C.A. § 101, to have the trial held in Burlington County, New Jersey, where the offense was alleged to have been committed. That section provides that "the trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience." The Government opposed the application upon the ground that the prosecution would be greatly inconvenienced if the trial were held in Burlington County rather than at Newark where it had been moved, since a great majority of the Government witnesses would be in the vicinity of the latter place. The court below refused the application, 19 F.Supp. 450, 455, holding that the change of venue applied for would result in great inconvenience to the Government. The application was addressed to the sound discretion of the court. Davis v. United States, 9 Cir., 32 F.2d 860; Barrett v. United States, 7 Cir., 82 F.2d 528. After carefully considering the record we are satisfied that its discretion was not abused. Obviously the inconvenience referred to in the statute is that of the Government since the appellants could hardly complain of being tried at the place where their offense was committed.

■ Aside from this, however, we are satisfied that Section 40 of the Judicial Code had no application for the reason that the offense with which these appellants were charged was not punishable with death. It will be seen from the provisions of the Federal Kidnapping Act which we have quoted that punishment by death may not be imposed under the act if prior to its imposition the kidnapped person has been liberated unharmed. We agree with the court below that the act, reasonably interpreted in the light of its purpose, refers to the condition of the kidnapped person at the time of his release. It bans the death penalty if the kidnappers release him sound and unharmed even though he may have received injuries during his captivity from which he has recovered. Any other construction would, it seems to us, tend to encourage the murder of the victim by the kidnappers if in the course of the kidnapping he had been injured. Congress must have preferred, as the court below aptly said (19 F.Supp. 450, 456), "a cured and live victim to a dead or permanently injured one, even if the kidnappers must refrain from liberating until the cure is accomplished."

In the present case the indictment while charging beating and torture of Wendel did not aver any continuing or permanent injury to him nor was it alleged either that he was still in the custody of the kidnappers or that he had been liberated by them in a harmed condition. Whether such averments were necessary to support a demand for the imposition of the death penalty we need not decide, since the evidence taken at the trial established that he was liberated by the appellants in a sound and unharmed condition. The case was, therefore, not one in which the death penalty could have been imposed, as the court below correctly held. It was consequently not a capital case within the meaning of Section 40 of the Judicial Code.

■ Section 1033, Revised Statutes, 18 U.S.C. § 562, 18 U.S.C.A. § 562, provides that when a person is indicted of a capital offense a list of the witnesses to be produced at the trial for proving the indictment shall be delivered to him at least two entire days before the trial. In the present case a supplemental list of Government witnesses was served upon appellants' counsel after the selection of jurors had been begun, although two days before the jury was sworn. Appellants contend that this was a violation of Section 1033. As we have already seen, however, the

case was not a capital one, consequently that section did not confer upon the appellants the right to a witness list two days before the trial.

During the empaneling of the jury it was suggested that an attempt to bribe the jurors had been made. The court, out of the presence of the jury, held a hearing on the question. The appellants moved that the public be excluded from this hearing and that the selection of the jury be postponed pending the determination of the question. Both motions were refused by the court below. We are satisfied that this action did not constitute an abuse of discretion.

During the course of the hearing upon the jury tampering charge the United States Attorney stated that his opinion was that the appellants knew all about it. In examining one of the prospective jurors who was afterwards accepted counsel for the appellants asked her whether the fact that the Government had made this charge through its District Attorney would affect her ability to decide the issue presented to her without prejudice. Objection to this question was sustained by the court below, we think properly. It referred to a charge by the Government of jury tampering by the defendants when there had been no such charge but merely an expression of opinion by the District Attorney during the course of the hearing. Furthermore this matter had been fully covered with this prospective juror in her prior examination by appellants' counsel.

Counsel for defendants Bleefield, Weiss and Schlossman who afterwards changed their pleas to guilty participated in the selection of the jury. Appellants contend that the exercise of peremptory challenges by these other defendants who had no intention of standing trial substantially prejudiced their rights in the selection of the jury. With this we cannot agree. The appellants did not have the right to have any particular individuals empaneled as jurors in their case. They consequently were not deprived of any right because Bleefield, Weiss and Schlossman by the exercise of peremptory challenges prevented a number of individuals from serving on the jury. The appellants' only right was to have an impartial jury and since the fact was that they did not exhaust their own peremptory challenges they cannot be heard to complain that they did not have the benefit of such a jury.

Needham v. United States, 7 Cir., 73 F. 2d 1.

A very large number of assignments of error are directed to the rulings of the trial judge upon questions of evidence, to comments made and questions asked by the United States Attorney, by counsel for the appellants and by the trial judge. The number of these renders it impracticable within the limits of this opinion to discuss them individually. We have nevertheless carefully studied the entire bill of exceptions. The case was hard fought, the trial lasting over six weeks. Counsel on both sides at times made comments and propounded questions which it would have been better to have omitted. Many of them were irrelevant and immaterial. We do not think, however, that the appellants were substantially prejudiced thereby, nor do we find any prejudicial error in the comments and examination of witnesses by the trial judge nor in his rulings upon the admissibility of evidence. While undoubtedly some evidence was introduced which was not properly admissible our consideration of the whole record has satisfied us that the admission of this evidence, in the light of the other evidence properly introduced, did not substantially prejudice the appellants. There was undoubtedly a vast amount of testimony which, if believed, pointed directly to their guilt and was amply sufficient to sustain the charge contained in the indictment.

The trial judge presented the case to the jury in a careful and satisfactory charge. His comments as to the testimony and the witnesses were entirely proper and within the latitude allowed him by the law. He made it amply clear to the jury that they were to find the facts from the evidence and that his comments were not binding upon them. The appellants complain of the refusal of the trial judge to charge certain of their points. We find no error here. Insofar as these points were material they were sufficiently covered by the general charge and by other points which he affirmed.

Some time after the jury had retired they forwarded to the trial judge the following inquiry in writing. "Your Honor, would it be permissible to bring in a verdict of guilty with a recommendation for leniency?"

The jury having returned to the court room the trial judge answered their in-

quiry as follows: "The answer to that inquiry, Madam Forewoman, and ladies and gentlemen, is yes; and I am sure that from what you have heard me say about the jury system and about this particular jury, that such a recommendation would have great weight with the Court. It may be my fault that that was not clear to you originally, because you will remember that I discussed at some length the meaning of that statute and said that you could not bring in any recommendation with respect to the death penalty. That may have confused you. If so, I am sorry."

Immediately thereafter the following colloquy took place in the presence of the jury:

"Mr. Davis: Well, may your Honor please, we would like to have an exception to that charge.

"The Court: Which charge?

"Mr. Davis: The charge you just gave to the jury.

"The Court: You may have it.

"Mr. Davis: For the reason, your Honor please, that your Honor is not bound by any recommendation to the jury.

"The Court: I didn't so state. I said—

"Mr. Davis: No, I am saying, your Honor please, that this jury ought not to be led into the thought that a recommendation of leniency is binding upon your Honor in any particular.

"The Court: I made no attempt to lead them into such thought. I said it would have great weight.

"Mr. Davis: Still I am taking that exception, your Honor please.

"The Court: All right, you may have an exception."

The appellants now complain that the trial judge committed prejudicial error in answering the jury's inquiry as he did in that it tended improperly to influence the jury and to coax a verdict of guilty from them. We do not regard it as having had that effect, however.

Under the Federal Kidnapping Act it is the duty of the Court if a defendant is found guilty, to impose a sentence of imprisonment upon him for such term of years as it in its discretion shall determine. This discretion is to be exercised in the light of all relevant facts and circumstances both in aggravation and in mitigation of punishment. The jury in the case before us, who for more than six weeks had heard the witnesses and observed the appellants, were undoubtedly in a position to make an intelligent and helpful recommendation as to the punishment to be imposed upon the appellants. The trial judge correctly told the jury that they were within their rights in making a recommendation for leniency. It was not error for him to indicate that he would give such a recommendation great weight, since it was addressed to his discretion. State v. Stern, 64 N.D. 593, 254 N.W. 765. It would, therefore, be his duty when he came to impose sentence to consider it in mitigation of punishment. On the other hand it was equally his duty to make clear that while such a recommendation would receive great consideration it would not be binding on him. State v. Farnsworth, 51 Idaho 768, 10 P.2d 295. We think that in the present case the trial judge made it entirely clear in his answers to counsel's request for an exception, which we have quoted, that a recommendation for leniency would not be binding upon him in any particular.

■ ' After a careful examination of the entire record of this case we are satisfied that the guilt of the appellants was clearly proved and that no errors appear which substantially prejudiced the appellants. It follows under Section 269 of the Judicial Code, as amended, 28 U.S.C. § 391, 28 U.S.C.A. § 391, that the judgments appealed from must be affirmed. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Jarvis v. United States, 1 Cir., 90 F.2d 243, certiorari denied 302 U.S. 705, 58 S.Ct. 25, 82 L.Ed. 544; Tanchuck v. United States, 10 Cir., 93 F.2d 534; Stokes v. United States, 5 Cir., 93 F.2d 744, certiorari denied 304 U.S. 558, 58 S.Ct. 945, 82 L.Ed. 1525; Morgan v. United States, 8 Cir., 98 F.2d 473.

■ After the argument of the appeal in this court the appellants filed a motion that the cause be remanded to the District Court for the purpose of enabling it to entertain a motion for a new trial upon the ground of newly discovered evidence. With the motion the appellant submitted to this court an affidavit setting forth the newly discovered evidence relied upon. Without passing upon the power of this court to grant such a motion (as to which see Realty Acceptance Corp. v. Montgomery, 284 U.S. 547, 52 S.Ct. 215, 76 L.Ed. 476), we are satisfied that the affidavit filed by the appellants does not provide sufficient support for their applica-

tion. The after-discovered evidence alleged was not as to the facts at issue in the case, but merely affected the credibility of the defendant Bleefield who testified for the Government. It consisted of the affidavit of a business associate to the effect that Bleefield had admitted to him some time after the trial that it was he and not the appellants who engineered the kidnapping of Wendel. The credibility of Bleefield was attacked by the appellants in a number of ways and at length during the trial. The evidence now sought to be presented would be at the best, therefore, merely cumulative. If it were permitted to be introduced the questions would still remain as to whether the affiant had truthfully recited Bleefield's subsequent conversation and if so which of the conflicting statements of the latter was true. Such evidence, raising as it does collateral issues not connected with the question of the appellants' guilt, would not justify the granting of a new trial where, as in this case, there was substantial evidence of the appellants guilt aside from the testimony of the witness sought to be discredited.

The motion to remand is denied and the judgments of the court below are affirmed.

BUFFINGTON, Circuit Judge (dissenting).

In this case it appears that in pursuance of the kidnapping statute of May 18, 1934, commonly known as the Lindbergh Law, Ellis H. Parker and Ellis H. Parker, Jr., were charged in an indictment with the violation thereof.

The statute, as noted below, provided for punishment of kidnappers by death with two exceptions, viz, "by death if the verdict of the jury shall so recommend," and "the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnaped person has been liberated unharmed." 18 U.S.C.A. § 408a.

The indictment alleged the defendants entered into a conspiracy to violate the statute by the kidnapping of one Wendel and during Wendel's confinement from time to time the said defendants would "assault, beat and exercise means of torture upon the body of the said Paul N. Wendel."

An alleged overt act stated in the indictment was that the defendants "by means of handcuffs, chains, ropes and straps and from time to time did assault, beat and make use of means of torture in and upon the body of the said Paul N. Wendel."

It will thus be seen that these allegations charged in the indictment excluded the defendants' immunity from the death penalty, which immunity existed only "if the kidnapped person has been liberated unharmed." In other words, the indictment affirmatively charged that the defendants were not entitled to death penalty exemption because the "assaults, beatings and tortures" closed the door of death penalty exemption.

To this indictment the defendants pleaded not guilty and on the issue thus formed the case went to trial.

To my mind the indictment and plea then and there made the issue a capital one and on that issue thus created by the pleadings the case went to trial. What the proofs subsequently were, did not affect the pleaded issue and to my mind the indictment and plea made the charge a capital one. If I am right and the pleaded case was a capital one, it follows the court erred in its subsequent procedural rulings.

Alleging the case was a capital one, the defendants prayed the court to set the case for trial in Burlington County as provided by a statute which said, "The trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience." Jud.Code, § 40, 28 U.S.C.A. § 101.

This statute, not only involving life, but also the right of trial in one's neighborhood, is to be observed in the spirit in which it was passed. It gave a defendant the absolute right of trial where the crime was committed unless such trial "caused great inconvenience." The burden, therefore, rests on the Government to show such great inconvenience. And this statute applying to capital trials, the proof of great inconvenience must be clear, undoubted and convincing in character. Indeed, the word "great" in this capital statute is so unusual in character that we are referred to no other statute where it is used. The proof of inconvenience of place in the trial of this case is the ordinary inconvenience occurring in the common run of cases, namely, where witnesses do not live at the place of trial. The only ground here shown by the Government was that many of the witnesses, especially telephone

girls, could more conveniently go to Newark than to Burlington County. But such inconvenience, in my judgment, did not measure to the character of inconvenience, namely "great inconvenience", required by the statute.

The other alleged ground, namely, the bringing to Newark day after day of two witnesses who were in prison in New York, is not the "great inconvenience" contemplated by the statute, since they could have been placed in the jail of Burlington County and detained there as long as their attendance was required. To my mind it is clear that the Government did not prove the "great inconvenience" the statute demanded and the court violated the statute in not ordering the case tried in Burlington County. And in that connection it will be noted the court below made "available superiority" not "great inconvenience" the test, saying: "The superior availability of Newark for the United States witnesses seems to us to be sound ground for the exercise of our admitted discretion. We accordingly exercise it to declare that the government has shown that the exception in the statute, rather than the statute itself, applies. We say the government has shown because in our view the convenience or inconvenience of the defendants is not in issue."

But another statute, imperative in terms, I feel was not enforced in the trial of the case. That statute provides that "when any person is indicted of treason, a copy of the indictment and a list of the jury, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each juror and witness, shall be delivered to him at least three entire days before he is tried for the same. When any person is indicted of any other capital offense, such copy of the indictment and list of the jurors and witnesses shall be delivered to him at least two entire days before the trial." 18 U.S.C.A. § 562.

Assuming I am right, as earlier contended, that the pleadings created a capital case and the subsequent procedural course were in error when the court made its ruling on this statute, eight jurors had been empanelled and selected, when the government served on defendants a list of witnesses it would call. As held in Hopt v. People of Territory of Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed.

262, followed in Lewis v. United States, 146 U.S. 370, 373, 13 S.Ct. 136, 36 L.Ed. 1011, "the trial commences at least from the time when the work of impaneling the jury begins."

In the present case no list was furnished in advance of trial and two of such named witnesses, without whose testimony no verdict against these defendants could be sustained, were allowed to testify. Both the letter and spirit of the statute are clear that not only the names but the residences must be given, and this for the manifest purpose of affording the defendants an opportunity to make before trial the inquiry about such witnesses in reference to such matters as materially arise in a criminal case. The failure of the court to afford the protection of these capital statutes to the defendants was reversible error.

So regarding, I respectfully but earnestly file this my dissent.